IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

———————————————————————

JEFFREY A. NELSON,

                Plaintiff,

     v.

BRUCE PLUMLEY, *et al.*,

                Defendants.

Civil Action No.
9:12-CV-0422 (TJM/DEP)

———————————————————————

<u>APPEARANCES</u>:

<u>FOR PLAINTIFF</u>:

JEFFREY A. NELSON, *Pro Se*
98-A-4066
Attica Correctional Facility
Box 149
Attica, NY 14011

<u>FOR DEFENDANTS</u>:

HON. ERIC T. SCHNEIDERMAN
Office of the Attorney General
State of New York
Department of Law
The Capitol
Albany, NY 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>OF COUNSEL</u>:


GREGORY RODRIGUEZ, ESQ.
Assistant Attorney General

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Jeffrey A. Nelson, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In his complaint, plaintiff claims that while incarcerated, he was subjected to the use of excessive force, deliberate indifference to his serious medical needs, a deprivation of procedural due process, and exposure to prison conditions constituting cruel and unusual punishment.  As relief, he seeks an injunction and awards of compensatory and punitive damages.

Currently pending before the court is defendants' motion to dismiss some of plaintiff's claims for failure to state a cause of action upon which relief may be granted.  For the reasons set forth below, I recommend that defendants' motion be granted.

I.    <u>BACKGROUND</u>[1]

Plaintiff is a prison inmate currently being held in the custody of the

_____

[1]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

2

New York State Department of Corrections and Community Supervision ("DOCCS"). Complaint (Dkt. No. 1) at 1. Plaintiff's claims arise from a series of events that occurred while he was confined in the Upstate Correctional Facility ("Upstate"), located in Malone, New York; the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York, where he was confined for a brief time in a mental health satellite unit for observation; and the Southport Correctional Facility ("Southport"), located in Pine City, New York. *Id.* at 1, 4. Plaintiff suffers from a mental illness, described by him as "depression, nervous panic attacks, and . . . some kind of memory loss." Complaint (Dkt. No. 1) at 16; Plf.'s Memo. of Law (Dkt. No. 28) at 4 (describing his mental illness as "chronic depression").

Plaintiff's complaint alleges that on January 3, 2012, while confined in the mental health unit at Clinton, defendants Jeffrey Spear and Bruce Plumley, corrections officers at Clinton, beat him, without provocation, while he was resting in bed. Complaint (Dkt. No. 1) at 5. The alleged beating resulted in plaintiff losing consciousness and suffering a laceration near his right eye requiring stitches, as well as a concussion, accompanied by vomiting and painful swelling. *Id.* at 7. Plaintiff alleges that he continues to suffer emotional residual affects of the incident, including nightmares and

3

flash backs.  *Id.* at 8.

Upon plaintiff's return to the mental health unit following medical treatment for his injuries, defendants Jean Berggern and S. Galani, two psychiatrists employed at the facility, directed that plaintiff be forcibly injected with medication, believed by him to be Haldol, took away his mattress and three mats, and exposed him to extremely cold conditions in his cell without any blanket, clothes, or shoes.  Complaint (Dkt. No. 1) 9.  Plaintiff was forced to endure those conditions for twenty-two hours.  *Id* at 10.

As a result of the incident allegedly giving rise to the beating, defendants Plumley and Spear issued two false misbehavior reports to plaintiff accusing him of violating prison rules, including failing to obey a direct order, assaulting a staff member, and engaging in violent conduct. Complaint (Dkt. No. 1) 13; Exhibits (Dkt. No. 1, Attach. 1) at 3-4.  On January 9, 2012, a disciplinary hearing was convened by defendant John E. Miller to address the charges against Nelson.  Complaint (Dkt. No. 1) at 13.  Following the hearing, Nelson was found guilty on all counts, and a penalty was imposed that included eighteen months of disciplinary special housing unit ("SHU") confinement, with a corresponding loss of telephone, package and commissary privileges, and an additional recommendation that he forfeit

twelve months of good time credits.[2]  *Id.* at 16; Exhibits (Dkt. No. 1, Attach. 1) at 5-6, *reproduced at* Rodriguez Decl. (Dkt. No. 25, Attach. 2) at 3-4.

Unrelated to the alleged assault from defendants Spear and Plumley, plaintiff alleges that he suffers from a partial hearing loss in his left ear and ringing in the right, and that defendants have refused to refer him to an audiologist for treatment.  Complaint (Dkt. No. 1) at 18.  According to Nelson, a request by Dr. Wesley Canfield, a prison physician at Southport, to defendant Lester Wright, the DOCCS Deputy Commissioner and Chief Medical Officer, in February 2011 that plaintiff be referred to an outside audiologist was denied. *Id.*; Exhibits (Dkt. No. 1, Attach. 1) at 12.

II.   PROCEDURAL HISTORY

On March 8, 2012, plaintiff filed his complaint in this action, accompanied by a request for leave to proceed *in forma pauperis* ("IFP"), a

_____

[2]        The copy of the hearing officer's ruling attached to plaintiff's complaint is only partially legible.  Dkt. No. 1, Attach. 1 at 5-6.  As part of their motion to dismiss, defendants have submitted a more legible copy of the hearing officer's determination.  Rodriguez Decl. (Dkt. No. 25, Attach. 1) at 3-4.  Because that determination was attached to plaintiff's complaint, it is properly before the court in connection with defendants' motion to dismiss. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (holding that, on a motion to dismiss, ordinarily a court's consideration is limited to the "face of the complaint and documents attached" thereto); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("Relying on Rule 10(c) [of the Federal Rules of Civil Procedure], we have held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

motion for a preliminary injunction, and an application for appointment of *pro bono* counsel. Dkt. Nos. 1, 2, 4, 5. By decision and order issued by Senior District Judge Thomas J. McAvoy on June 1, 2012, plaintiff's IFP application was granted, his claims against defendants Plumley and Spear relating to the issuance of allegedly false misbehavior reports were dismissed with prejudice, the motion for a preliminary injunction was denied, and plaintiff's request for appointment of counsel was also denied. Dkt. No. 9 at 11-12.

Following service, defendants moved on August 10, 2012, seeking dismissal of various of plaintiff's claims. *See generally* Dkt. No. 25. In their motion, defendants argue that (1) plaintiff's claims against them in their official capacities are precluded by the Eleventh Amendment; (2) plaintiff's procedural due process cause of action is barred based upon his failure to first invalidate the unfavorable disciplinary determination; (3) plaintiff's medical indifference cause of action fails to state a claim; (4) all claims against defendant Joanne Waldron are subject to dismissal, based upon the lack of any showing of her personal involvement in the constitutional deprivations alleged; and (5) the conditions of confinement allegedly experienced by the plaintiff are not sufficiently oppressive to support an Eighth Amendment cruel and unusual punishment violation. *Id.* Plaintiff

6

responded to defendants' motion by filing a memorandum of law, received by the court on August 23, 2012.  Dkt. No. 28.

Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)).  While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions.  *See*

*id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570)

(alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Eleventh Amendment

Plaintiff's complaint alleges that, at the relevant times, the named defendants were acting both in their individual and official capacities in violating plaintiff's constitutional rights. Complaint (Dkt. No. 1) at 3. In their motion to dismiss, defendants argue that, to the extent they are sued in their official capacities, plaintiff's claims are precluded under the Eleventh

9

Amendment. Defs.' Memo. of Law (Dkt. No. 25, Attach. 1) at 6-7.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest.[3] *See, e.g., Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of New York App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing, *inter alia*, *Cory*, 457 U.S. at 89-91). "To the extent that a state official is sued for damages in his

---

[3] In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham Cnty.*, 547 U.S. 189, 193 (2006).

official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[4]  *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, because plaintiff's damage claims against the named-defendants in their official capacities are, in reality, claims against the State of New York, they are subject to dismissal.  *Daisernia*, 582 F. Supp. at 798-99.  Accordingly, I recommend that, to the extent that any of the claims asserted in plaintiff's complaint are asserted against any of the named-defendants in their official capacities, all of those claims be dismissed with prejudice.

## C.    The Rule in *Heck v. Humphrey*

Plaintiff's complaint asserts a due process claim arising out of a disciplinary hearing conducted before defendant Miller on January 9, 2012. Complaint (Dkt. No. 1) at 13-16.  As a result of that disciplinary hearing, plaintiff was found guilty, and part of his penalty resulted in loss of good-time

---

[4]    By contrast, the Eleventh Amendment does not preclude lawsuits seeking to impose individual or personal liability on state officials under section 1983.  *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

11

credits.  Exhibits (Dkt. No. 1, Attach. 1) at 5-6*, reproduced at* Rodriguez Decl. (Dkt. No. 25, Attach. 2) at 3-4.  Defendants move to dismiss this claim because, in accordance with *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny, plaintiff has not alleged that this disciplinary sentence has been invalidated.  Defs.' Memo. of Law (Dkt. No. 25, Attach. 1) at 7-8.

In its decision in *Heck*, 512 U.S. 477, the Supreme Court held that a state prisoner's claim for damages under 42 U.S.C. § 1983 is precluded if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" absent proof that the inmate has already secured invalidation of that conviction or sentence.  *Heck*, 512 U.S. at 487.  In 1997, the Supreme Court issued a decision in *Edwards v. Balisok*, 520 U.S. 641 (1997), in essence extending *Heck*, and holding that a claim for damages arising from allegations of a violation of procedural due process in the context of a prison disciplinary hearing is not cognizable under section 1983 where the nature of the due process challenge necessarily implies the invalidity of the disciplinary determination issued and/or punishment imposed, unless the disposition has already been reversed through a state administrative or judicial habeas proceeding.  *Balisok*, 520 U.S. at 645.

Since the court's decision in *Balisok*, was rendered, the Second Circuit

has interpreted it to differentiate between cases involving challenges to disciplinary penalties that only affect the conditions of an inmate's confinement – including disciplinary segregation, such as keeplock and SHU confinement – and cases resulting in the imposition of sanctions impacting an inmate's good-time credits. *Jenkins v. Haubert*, 179 F.3d 19, 22-23 (2d Cir. 1999). Applying *Balisok*, the Second Circuit concluded in *Jenkins* that a plaintiff challenging only the conditions of his confinement, where no good time credits stand to be lost as a result of the disciplinary hearing at issue, need not show, as a threshold matter, that the disciplinary decision and sentence were reversed or invalidated. *Id.* at 27. Because the plaintiff in *Jenkins* was not attacking the fact or length of his confinement, either directly or indirectly, the court found it unnecessary for him to invalidate the prison hearing officer's judgment against him prior to bringing a section 1983 claim for damages. *Id.*

Addressing more recently the rule announced in *Balisok*, and carried over into the Supreme Court's later decision in *Muhammad v. Close,* 54 U.S. 749 (2004), the Second Circuit has clarified that if, as a prerequisite for maintaining a section 1983 action, a prisoner agrees to abandon any actual or potential challenge aimed at the duration of his incarceration, then success

in the section 1983 action will have no affect on the sanctions that relate to the length of time served in prison, and, accordingly, the inmate may proceed with his a due process claim.  *Peralta v. Vasquez*, 467 F.3d 98, 105 (2d Cir. 2006), *cert. denied sub nom*., *Jones v. Peralta*, 551 U.S. 1145 (2007).  Under *Peralta*'s limited exception to the rule in *Balisok,* in order to pursue his section 1983 due process claim in this action, a plaintiff must abandon – not just now, but for all time – any claims he may have with respect to the duration of his confinement that arise out of the proceeding now challenged.  *Peralta*, 467 F.3d at 104.

In light of the Second Circuit's decision in *Peralta*, I recommend granting defendants' motion to dismiss plaintiff's procedural due process claim, unless, within thirty days of any order adopting this report, plaintiff notifies the court and defendants' counsel, in writing, of his decision to forever abandon any claims he may have with respect to the duration of his confinement relating to the disciplinary proceeding now challenged.

D.    Medical Indifference

Plaintiff's complaint asserts two distinct medical indifference claims. First, it alleges that defendants Berggern and Galani, two psychiatrists employed at Clinton, violated professional standards by failing to provide him

with proper psychiatric care and discharging him only one day after the alleged assault by defendants Plumley and Spear without proper diagnoses or treatment.  Complaint (Dkt. No. 1) at 9-11.  Second, plaintiff's complaint alleges that defendant Wright, the DOCCS Chief Medical Officer, deprived plaintiff of adequate medical care by denying his referral to an audiologist, made by Dr. Canfield, a physician at Southport.  *Id.* at 18, 21.  In their motion, defendants seek dismissal of both of these claims.  Defs.' Memo. of Law (Dkt. No. 25, Attach. 1) at 9-13.

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)).  While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration."

*Estelle,* 429 U.S. at 103.  Failure to provide inmates with medical care, "[i]n

the worst cases, . . . may actually produce physical torture or lingering death,

[and] . . . [i]n less serious cases, . . . may result in pain and suffering no one

suggests would serve any penological purpose."  *Id.*

A claim alleging that prison officials have violated an inmate's Eighth

Amendment rights by inflicting cruel and unusual punishment must satisfy

both objective and subjective requirements.  *Wright v. Goord*, 554 F.3d 255,

268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010).

To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively
> serious deprivation entails two inquiries.  The first
> inquiry is whether the prisoner was actually deprived
> of adequate medical care.  As the Supreme Court has
> noted, the prison official's duty is only to provide
> reasonable medical care . . . . Second, the objective
> test asks whether the inadequacy in medical care is
> sufficiently serious.  This inquiry requires the court to
> examine how the offending conduct is inadequate and
> what harm, if any, the inadequacy has caused or will
> likely cause the prisoner.

*Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal citations

omitted).

The second inquiry of the objective test requires a court to look at the

seriousness of the inmate's medical condition if the plaintiff alleges a

complete failure to provide treatment. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (internal quotation marks and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotations marks omitted).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d

Cir. 1999).  "In medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health."  *Salahuddin*, 467 F.3d at 280.  "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  *Id.* (citing *Farmer,* 511 U.S. at 837); *see also Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer*); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same).[5]  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin*, 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839-40).

1.  Medical Indifference Claims Against Defendants Berggern and Galani

Plaintiff's complaint alleges that defendants Berggern and Galani failed to provide adequate mental health care by returning him to his cell only one day after the alleged assault by defendants Plumley and Spear.  Complaint (Dkt. No. 1) at 10-11.  It also alleges that plaintiff suffered from a "mental

---

[5]  Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

cris[i]s" as a result of the alleged assault.  *Id.* at 11.  These allegations are insufficient to state a claim for medical indifference for three reasons.

First, the allegations do not satisfy the first inquiry of the objective test for a deliberate indifference claim because the allegations do not plausibly suggest that plaintiff was denied reasonable medical care.  *See Salahuddin*, 467 F.3d at 279 ("[T]he prison official's duty is only to provide reasonable care.").  None of the allegations in plaintiff's complaint plausibly suggest that plaintiff needed additional mental health care beyond what defendants Berggern and Galani provided.  *See generally* Complaint (Dkt. No. 1).  The allegation that plaintiff suffered a "mental cris[i]s" following the alleged assault is vague and conclusory, and does little to illuminate how the care provided by defendants Berggern and Galani was "unreasonable."  *See Farmer*, 511 U.S. at 845 ("[P]rison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause.").

Second, these allegations do not plausibly suggest that the "inadequacy in medical care [was] sufficiently serious."  *Salahuddin*, 467 F.3d at 280.  This inquiry is confined to the alleged inadequacy in the medical care provided, but it does not focus on prisoner's medical condition.  *Id.*  Here,

plaintiff merely alleges that defendants Berggern and Galani released plaintiff back to his cell prematurely, without a "diagnosis, [or] any medical mental health treatment."  Complaint (Dkt. No. 1) at 11.  However, other allegations suggest that plaintiff was, in fact, provided adequate treatment, where he was provided with medication and remained in the care of defendants Berggern and Galani overnight.  *Id.* at 10.  Without more, I cannot find that plaintiff's complaint alleges any facts plausibly suggesting that the alleged inadequate medical care provided by defendants Berggern and Galani was sufficiently serious.

Third, and finally, plaintiff's complaint alleges no facts that plausibly suggest defendants Berggern and Galani acted with the requisite "deliberate indifference."  *See Salahuddin*, 467 F.3d at 280 (finding that, to satisfy the subjective test of a medical indifference claim, "it suffices if . . . the official acted with deliberate indifference to inmate health").  None of the allegations in plaintiff's complaint suggest that, by defendants Berggern and Galani returning plaintiff to his cell only one day after the alleged assault, plaintiff was at "substantial risk" to "serious . . . harm."  *Id.*  Instead, plaintiff's complaint alleges that he survived the next twenty-two hours in his cell with no harm as a result of his alleged premature release.  *See* Complaint (Dkt.

No. 1) at 10 (explaining that plaintiff's legs became painful and tired, and his feet and toes became "frozen and hard[]" as a result of the cold temperature in his cell, not because he was returned to his cell after only one day following the alleged assault).

For these reasons, I recommend that defendants' motion to dismiss as it relates to plaintiff's claim of medical indifference against defendants Berggern and Galani be granted.

### 2.    Medical Indifference Claims Against Defendant Wright

Plaintiff's complaint alleges that defendant Wright was deliberately indifferent to plaintiff's serious medical need, by denying his referral to an audiologist by Dr. Canfield, a physician at Southport, to address the partial hearing loss in his left ear. Complaint (Dkt. No. 1) at 18-19. These allegations are insufficient to state a claim of deliberate indifference for two reasons.

First, the letter attached to plaintiff's complaint from defendant Wright suggests that, contrary to plaintiff's assertions, he actually received reasonable care from defendant Wright. Exhibits (Dkt. No. 1) at 10. *See Salahuddin*, 467 F.3d at 279 ("[T]he prison official's duty is only to provide reasonable medical care."). Defendant Wright addressed a number of

plaintiff's requests in his letter, including an apparent request by plaintiff for medical boots, and a recommendation that plaintiff contact the Southport dental department regarding his dental guard.  Exhibits (Dkt. No. 1) at 10.  As it relates specifically to plaintiff's ear condition, defendant Wright observed that plaintiff refused the treatment recommended by his primary care provider, and advised plaintiff that, following that recommended treatment, plaintiff's primary care physician "may then examine [plaintiff's] ear for any difficulties."  *Id.*  Although plaintiff's complaint alleges that defendant Wright was deliberately indifferent by denying plaintiff's referral to an audiologist, it appears that defendant Wright, in his capacity as the DOCCS Chief Medical Officer, provided plaintiff reasonable care in response to his medical concerns.  *Id.*  *See Estelle*, 429 U.S. at 107 ("[T]he question of whether . . . additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment. A medical decision not to order [an additional diagnostic technique] does not represent cruel and unusual punishment."); *see also Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *6 (S.D.N.Y. Sept. 27, 2012) ("Plaintiff's allegation that he was denied a referral to a specialist and an M.R.I. . . . cannot salvage his deliberate indifference claim.").

Second, none of the allegations in plaintiff's complaint plausibly suggest that defendant Wright acted with the "necessary level of culpability" in denying plaintiff's referral to an audiologist. *Blyden*, 186 F.3d at 262; *see also Salahuddin*, 467 F.3d at 280 ("'Deliberate indifference[]' . . . requires that the charged official act . . . while actually aware of a substantial risk that serious inmate harm will result."). Indeed, nothing in plaintiff's complaint suggest that defendant Wright knew of a substantial risk of harm to plaintiff by denying plaintiff's referral. In contrast, it appears that plaintiff's condition did not impose any daily limitations on plaintiff. For example, in response to plaintiff's grievances related to his ear condition, the superintendent at Southport indicated that plaintiff is able "to carry on normal conversation with the medical staff" and that "[s]ecurity staff has not reported [plaintiff] missing count or an inability to hear announcements for programs." Exhibits (Dkt. No. 1, Attach. 1) at 18. In addition, I note that none of the allegations suggest that plaintiff's ear condition has progressed or continues to become more dangerous as time passes. *See generally* Complaint and Exhibits (Dkt. No. 1 and Dkt. No. 1, Attach. 1).

For these reasons, I recommend that defendants' motion to dismiss plaintiff's deliberate indifference claim against defendant Wright be granted.

E.   Plaintiff's Eighth Amendment Conditions of Confinement Claim

Plaintiff's complaint alleges that he endured cruel and unusual punishment by defendants Berggern and Galani when they ordered that plaintiff's mattress, three mats, clothes, and blankets be taken away from him, and that the temperature in his cell be maintained at "extremely cold" for twenty-two hours.  Complaint (Dkt. No. 1) at 9.  Defendants also seek dismissal of this cause of action as failing to plausibly state an Eighth Amendment violation.  Defs.' Memo. of Law (Dkt. No. 25, Attach. 1) at 14-16.

Generally, claims that the conditions of a inmate's confinement violate his Eighth Amendment right to be free of cruel and unusual punishment are analyzed using the same objective and subjective tests as those used for a deliberate indifference to a serious medical need claim under the Eighth Amendment.  *Compare Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) ("To establish an Eighth Amendment violation, an inmate must show: (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities; and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health and safety." (internal quotation marks and alterations omitted)) *with Salahuddin*, 467 F.3d at 279-80 ("The Cruel and

Unusual Punishments Clause of the Eighth Amendment imposes a duty upon officials to ensure that inmates receive adequate medical care[ and] . . . a prison official violates the Eighth Amendment only when two requirements are met.  The first requirements is objective[, and] . . . the second requirement . . . is subjective.").

"As to the objective element, there is no 'static test' to determine whether a deprivation is sufficiently serious; 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Jabbar*, 683 F.3d at 57 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). "As for the subjective requirement, . . . the prison official must know of, and disregard, an excessive risk to inmate health or safety."  *Id.* (citing *Farmer*, 511 U.S. at 837).

Analysis of claims associated with prison conditions is extremely case specific.  *See Trammel v. Keane*, 338 F.3d at 155, 163 (2d Cir. 2003) ("[T]he deliberate indifference standard must be applied in a way that accounts for the precise circumstances of the alleged misconduct and competing institutional concerns.").  The Second Circuit has held that exposure to extremely cold temperatures can constitute cruel and unusual punishment under the Eighth Amendment.  *See Benjamin v. Fraser*, 343 F.3d 35, 52 (2d

Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir 2009) (affirming district court's conclusion that "exposure to extremes of temperature violated the detainees' constitutional rights"); *Gatson v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (finding that the plaintiff's exposure to freezing temperatures throughout the winter set forth an Eighth Amendment conditions-of-confinement claim); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (reversing district court's grant of summary judgment in favor of the defendants where there was evidence that the plaintiff had been deliberately exposed to bitter cold in his cell block for three months); *Wright v. McMann*, 387 F.2d 519, 521, 526 (2d Cir. 1967) (vacating a dismissal on the pleadings where the complaint alleged that inmates were, *inter alia*, exposed to "subfreezing temperatures" for at least thirty-three days). In addition, although the Second Circuit held in *Trammel*, 338 F.3d 155, that fourteen days without a mattress and bedding, and seventeen days without toiletries or clothing in "bitter cold" are not sufficient deprivations for an Eighth Amendment violation, in that case, the court focused on whether deprivations were "reasonably calculated to correct [the plaintiff's] outrageous behavior." *Trammel*, 338 F.3d at 165. Moreover, in that case the court found that the plaintiff had not shown deliberate indifference to his health and safety where

the defendants "regularly observed [him] to ensure that his health was not jeopardized." *Id.* at 165.

It is true that some district courts in this circuit have found that allegations of exposure to cold temperatures for short periods of time, in conjunction with a deprivation of clothing and/or bedding, are insufficient to state a claim under the Eighth Amendment. *See*, *e.g.*, *Borges v. McGinnis*, No. 03-CV-6375, 2007 WL 1232227, at *2, 6 (W.D.N.Y. Apr. 26, 2007) (granting defendants' motion for summary judgment where the plaintiff alleged he suffered nothing "more than frustration and discomfort as a consequence of the [fifty degree temperature] in his cell" for three days); *Smith v. Burge*, No. 03-CV-0955, 2006 WL 2805242, at *7 (N.D.N.Y. Sept. 28, 2006) (Kahn, J.) (finding, on summary judgment, that plaintiff's allegations of being deprived of "various property (except for a T-shirt and underwear) for less than one day while confined to a cell that was 'cold' or 'very cold' due to some gallery windows being open in late-March in Auburn, New York" insufficient to rise to the level of an Eighth Amendment violation); *Davis v. Buffardi*, No. 01-CV-0285, 2005 WL 1174088, at *2 (N.D.N.Y. May 4, 2005) (Magnuson, J.) (granting the defendants' motion for summary judgment where the plaintiff had failed to adduce any evidence that, during

27

the ten-day period in February when the prison facility's boiler broke down and the plaintiffs were allegedly denied extra blankets and clothing, the temperature in the facility was so cold that the plaintiffs experienced substantial harm); *Grant v. Riley*, No. 89-CV-0359, 1993 WL 485600, at *4 (S.D.N.Y. Nov. 24, 1993) (granting the defendants' motion for summary judgment where the plaintiff alleged that "there was no heat in [his] cell for at least three days" and "he had no coat, bedding or blankets for over nine hours, and that cold wind blew through the broken windows" because, *inter alia*, he did "not claim that any defendant deliberately subjected him to the cold"); *Scot v. Merola*, 555 F. Supp. 230, 231 (S.D.N.Y. 1983) (finding that the plaintiff's allegations that he was confined in an "area [that] had no heat, broken windows, and [where] the temperature dropped below 50 degrees" were insufficient to state a claim under the Eighth Amendment).

In this case, however, although it is a close call, I find that plaintiff has stated a plausible claim under the Eighth Amendment, given the many deprivations he allegedly endured, including the alleged deprivation of clothing, a mattress, and mats or blankets – all in a cell that was "extremely cold." Complaint (Dkt. No. 1) at 9. In coming to this conclusion, I remain mindful of the court's obligation to liberally construe a *pro se* plaintiff's

28

pleadings on a motion to dismiss for failure to state a claim, and that "the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff*, 537 F.3d at 191 (internal quotation marks omitted). Most of the district court cases cited above that dismiss the plaintiff's Eighth Amendment claim do so on a motion for summary judgment, at a point when the record is more fully developed. While the defendants in this action may have a rational explanation for the conditions plaintiff allegedly endured, or may deny those allegations, or the court may later determine, on a motion for summary judgment, that the twenty-two hour exposure alleged is not sufficient to sustain an Eighth Amendment claim*,* at this procedural juncture, I recommend against dismissal of this claim asserted against defendants Berggern and Galani.

F.    Personal Involvement

Defendants move to dismiss any claims asserted against defendant Waldron because none of the separate causes of action identified in plaintiff's complaint are asserted against her. Defs.' Memo. of Law (Dkt. No. 25, Attach. 1) at 13. In addition, defendants argue that whatever allegations are contained in plaintiff's complaint against defendant Waldron are conclusory. *Id.* at 113-14. Although it is true that none of plaintiff's causes of action

29

include defendant Waldron, Dkt. No. 1 at 20-21, liberally construed, plaintiff's complaint asserts a claim of deliberate indifference against defendant Waldron based on her capacity as the chief of the mental health unit at Clinton.  Complaint (Dkt. No. 1) at 12.

It is well established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

When evaluated against these guideposts, it is apparent that plaintiff's complaint fails to contain sufficient allegations of fact to implicate defendant Waldron's personal involvement in the offending conduct alleged. *See generally* Complaint (Dkt. No. 1) at 12. Plaintiff does not indicate the basis for which he concludes that defendant Waldron was aware of his circumstances and either participated in the decision to expose him to the allegedly harsh conditions, or, with knowledge of the alleged conditions, failed to intervene on his behalf and end the deprivations. *Id.* I therefore recommend that plaintiff's claims asserted against defendant Waldron based on supervisor liability be dismissed.

G.     <u>Whether to Permit Amendment</u>

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to

allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail in his complaint. With the exception of his damage claims against all of defendants in their official capacities, which I recommend be dismissed with prejudice, I therefore recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying

acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should specifically allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

IV.     SUMMARY AND RECOMMENDATION

        Plaintiff's complaint in this action contains certain claims that are not plausibly stated. Plaintiff's damage claims against the defendants in their official capacities, for example, are precluded by the Eleventh Amendment. Similarly, plaintiff's due process claim is subject to dismissal, absent his agreement to abandon any and all claims challenging the duration of his

33

confinement, which may have been affected by the sentence imposed at the disciplinary hearing from which plaintiff's due process challenges arise. Plaintiff's medical indifference claims are also subject to dismissal as not plausibly stated. For these reasons, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 25) be GRANTED, in part, and that plaintiff's damage claims against all of defendants in their official capacities, his claims for deliberate medical indifference against defendants Berggern, Galani, and Wright and all claims against defendant Waldron, be dismissed, with leave to replead, except as to his cause of action for damages against all defendants in their official capacities; and it is further hereby

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 25) be otherwise DENIED, as it relates to plaintiff's Eighth Amendment conditions of confinement claim asserted against defendant Berggern and Galani; and it is further hereby

RECOMMENDED that plaintiff's procedural due process cause of action, arising from the disciplinary hearing conducted by defendant Miller, be DISMISSED, unless within thirty days of the date of an order adopting this recommendation, plaintiff notifies the court and defendants' counsel, in

writing, of his abandonment, for all time, of any claim associated with the duration of his confinement arising from the disciplinary proceeding conducted by defendant Miller.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     January 24, 2013
           Syracuse, New York


Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

C   Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
No. 97-CV-1385 LEK DRH.

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

*1 This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER FN1

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.FN2 In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

## I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. Id. at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. Id. at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. Id. at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. Id. at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Id. at ¶¶ 22, 27-28.

## II. Motion to Dismiss

*2 When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from these facts in favor of the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir.1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

## III. Discussion

### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); Rhodes v. Chapman, 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. Farmer, 511 U.S. at 837.

### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord*, 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare* *Ingalls v. Florio*, 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and* *Zolnowski v. County of Erie*, 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with* *Harris v. Murray*, 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer*, 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See* *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer*, 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at *3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at *3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Eugene C. SHEPHERD, Plaintiff,
v.
James POWERS et al., Defendants.
No. 11 Civ. 6860(LTS)(RLE).

Sept. 27, 2012.
*MEMORANDUM OPINION AND ORDER*

LAURA TAYLOR SWAIN, District Judge.

**\*1** Plaintiff Eugene Shepherd ("Plaintiff") brings this action, principally pursuant to 42 U.S.C. § 1983, alleging that Defendants Westchester County, Westchester County Health Care Corporation ("WCHCC"), New York Medical College ("NYMC"), New York Correct Care Solutions Medical Services, P.C. ("NYCCSMS"), Correct Care Solutions, LLC ("CCS"), and several individual employees of these entities, violated his constitutional rights while he was in pre-trial confinement in the Westchester County Jail ("WCJ"). Westchester County Defendants,[FN1] NYMC, and NYCCSMS/CCS have each moved pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff's Second Amended Complaint ("SAC" or the "Complaint") for failure to state a claim upon which relief can be granted. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1367. The Court has thoroughly reviewed the parties' submissions and, for the reasons set forth below, the County Defendants' motion to dismiss the Complaint is granted in part and denied in part. NYMC and NYCCSMS/CCS's motions to dismiss the Complaint are granted in full.

> FN1. The County Defendants are Westchester County; WCHCC; Westchester Medical Center; Joseph Spano ("Spano"), the Deputy Commissioner of Westchester County DOC from January 1, 2006 through July 27, 2008, and Commissioner of DOC from July 28, 2008 through December 31, 2009 (Second Amended Complaint ("SAC" or "Complaint") ¶ 13); Kevin Cheverko ("Cheverko"), Commissioner of Westchester County DOC from January 1, 2010 to date (*id.* ¶ 14); Anthony Amicucci ("Amicucci"), the Warden of the WCJ from January 1, 2006 through approximately June 2010 (*id.* ¶ 15); Marcelo Diaz ("Diaz"), the Warden of the WCJ from June 2010 to date (*id.* ¶ 16); WCJ correctional officers James Powers ("Powers"), Robert O'Dell ("O'Dell"), Mervin Enders ("Enders"), and Kevin Johnson ("Johnson") (*id.* ¶¶ 17, 19); Sgt. Karim Haspil ("Hapsil") and Sgt. Jose Pena ("Pena"), supervising corrections officer in the WCJ (*id.* ¶ 18); Emergency Response Team ("ERT") Members # 1–# 3 (*id.* ¶ 19). The County Defendants' motion to dismiss is also brought on behalf of Karl Adler ("Adler"), M.D., President of NYMC (*id.* ¶ 20); NYMC employees, Randy Goldberg ("Goldberg"), M.D., and Gail Bailey–Wallace ("Bailey–Wallace") (*id.* ¶ 21); and Michael Israel ("Israel"), President and Chief Executive Officer of WCHCC. (*Id.* ¶ 23.)

*BACKGROUND*

The following facts are alleged in Plaintiff's Complaint and are accepted as true for purposes of this motion practice.

*Factual Allegations Concerning Plaintiff's Mistreatment*

From April 19, 2009, through August 6, 2010, and August 10, 2010, through August 20, 2010, Plaintiff was a pre-trial detainee in custody of the WCJ. (SAC ¶ 78.) On March 9, 2010, Plaintiff had a "verbal disagreement" with Powers—a guard known as "Superman" on account of his aggression and use of excessive force on inmates—over the apparent fact that he was the only inmate who was subjected to a full strip search upon returning from court. (*Id.* ¶¶ 80, 81.) As Plaintiff stripped naked, Powers drove a table into Plaintiff's legs, jumped across the table, grabbed Plaintiff's bare genitals, and squeezed them with

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

great force as he slammed Plaintiff's head and back against a wall, furniture, and the floor. This caused severe injury and pain to Plaintiff's head, back, and genitals. (*Id.* ¶ 82.) Defendants Pena, Pectol, Nunez, Haspil, O'Dell, Johnson, Enders, and ERT Members # l-# 3 assisted Powers in applying excessive force: Enders applied excessively tight leg restraints and Pena sat on Plaintiff's back and attempted to "break, dislocate or rip off [Plaintiff's] fingers on his right hand, causing severe injury and pain." (*Id.* ¶¶ 83–84.) At no time did Plaintiff resist or fail to comply with any directives of the WCJ staff. (*Id.* ¶ 84.) After Plaintiff was brought to his feet and relieved of the restraints, he was given a prison uniform and directed to get dressed. (*Id.* ¶ 85.) Plaintiff then requested that he be given back his underclothes, a request which was denied. (*Id.*) When Plaintiff made the request a second time, Haspil warned Plaintiff that chemical agents would be used if he did not comply with the order to get dressed. (*Id.* ¶ 86.) As Plaintiff began to put the uniform on, Enders a man significantly larger than Plaintiff began pushing Plaintiff without cause. (H.¶¶ 86–87.) Plaintiff explained to the guards, "as he was facing Enders with his genitals exposed," that the uniform was too small. (*Id.* ¶ 87.) As he turned his back to the wall to remove the pants, Enders grabbed him from behind and threw him to the floor; Haspil, Johnson, and ERT Members # l-# 3 converged to reapply hand and leg restraints and began choking Plaintiff; O'Dell put down his shield and jumped on Plaintiff's back. (*Id.* ¶ 87–88.) Haspil and O'Dell yelled directives at Plaintiff to stop resisting, "in order to cover-up and justify their tactically contraindicated use of force," and despite the fact that Plaintiff displayed no resistance. (*Id.* ¶ 88.)

**\*2** Plaintiff was then brought to a medical station and seated in a chair. (*Id.* ¶ 89.) While there, O'Dell intentionally stepped on Plaintiff's leg restraints, inflicting pain and lacerating his ankles. Plaintiff alleges in the SAC that he was examined for a total of fourteen seconds, that his complaints of back pain were ignored by the nurse, and that he was released to the general population without being examined by a physician. (*Id.*) These allegations are seemingly inconsistent with Plaintiff's admission in an earlier complaint that he received over-the-counter medication to treat his pain and that he was provided an X-ray on his back and hand. (*See Pro Se* Complaint, attached as Ex. B to County Def's Mot. to Dismiss).

Powers, Haspil, O'Dell, Johnson, and Enders submitted fraudulent reports of the incident, falsely stating that Plaintiff had acted in an aggressive manner. Plaintiff alleges that these fraudulent reports were part of "Westchester County's custom and practice of using excessive force on inmates in the WCJ, and as part of and in furtherance of the conspiracy to cover-up their misconduct." (SAC ¶ 92.) Plaintiff alleges that the reports were objectively unbelievable, given the significant difference in size and strength between Plaintiff and the guards, and that a cursory review of the ERT video would have revealed the reports' falsity. (*Id.* ¶ 93.) An investigation of the incident was completed and reviewed by Defendants Cheverko and Amicucci pursuant to DOC policy. (*Id.* ¶ 91.) The report led to the filing of criminal charges, as to which Plaintiff was later acquitted. (*Id.* ¶ 106)

Apparently as a result of this false report, Plaintiff was placed in a Special Housing Unit ("SHU") for two months. While in the SHU, Plaintiff was denied medical care, participation in a substance abuse program, access to legal assistance and materials, and participation in Sunday religious worship; his personal Bible was confiscated and has yet to be returned. (*Id.* ¶ 99.) The conditions in the SHU cell were deplorable: it reeked of excrement and vomit, food was splattered on the walls, mold was readily visible and growing on the walls, sink and shower, and Plaintiff was denied adequate blankets to protect him from "severely cold" temperatures. (*Id.* ¶ 94.) While in the SHU, Plaintiff submitted four or five medical Sick Call requests due to "severe pain in his back, fingers and genitals." Some requests were denied outright; others were granted, but resulted in "only cursory examinations that consisted of asking one or two questions through Plaintiff's cell window." (*Id.* ¶ 97.)

After submitting multiple Sick Call requests, Plaintiff was directed to report to Dr. Goldberg. (*Id.* ¶ 98.) When Plaintiff began to describe the condition of his back, Goldberg stated he was only examining Plaintiff for his asthma condition and directed Plaintiff to submit a separate Sick Call request for his back. Plaintiff submitted a separate request, but was not provided a physical examination for his injuries. (*Id.*) Plaintiff was also denied

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

an MRI because it was deemed "too expensive." (*Id.* ¶ 101.)

**\*3** Plaintiff was then transferred to the "Old Jail" for approximately thirty days, where he was held in "locked down" for sixteen hours each day. During this period of time, Plaintiff was further denied medical care, participation in the substance abuse program, access to legal assistance and the law library, (*Id.* ¶ 100.)

In July or August 2010, Plaintiff sought medical care, including pain medication, from Nurse Noe for physical injuries and pain in his back and fingers. His request was denied and she refused to refer Plaintiff to a licensed physician or orthopedic specialist, stating, "Suck it up. You're going to have an abnormality in that finger. You have to learn to live with it." (*Id.*¶ 107.) Upon being released from custody of the WCJ, medical personnel informed Plaintiff that he suffered from post-traumatic stress disorder as a result of the mistreatment. (*Id.* ¶ 104.)

*Allegations Against NYMC. WCHCC, and NYCCSMS/CCS*

Plaintiff brings claims against NYMC, WCHCC, and NYCCSMS/CCS for denial of medical care and breach of contract, as well as pendent claims for medical negligence and intentional and negligent infliction of emotional distress. Plaintiff alleges that Westchester County contracted with NYMC for the provision of primary medical care to inmates in the WCJ, from at least January 1, 2006, through July 25, 2010, and that this contract delegated to NYMC responsibility for creating, implementing and maintaining policies and procedures regarding the provision of care, including the medical grievance process, maintenance of inmate medical files and referrals for advanced medical care. (*Id.* ¶ 27.) During this time, Bailey–Wallace and Goldberg were the only two physicians employed by NYMC to provide and supervise primary medical care to inmates. (*Id.* ¶ 28.) During the same time period, Westchester County entered into a contract with WCHCC for the provision of nursing services to inmates in the WCJ. (*Id.* ¶ 29.) On July 26, 2010, Westchester County signed a contract transferring NYMC and WCHCC's responsibilities to CCS and/or NYCCSMS. (*Id.* ¶ 30.)

Plaintiff alleges, on information and belief, that NYMC, WCHCC and NYCCSMS/CCS had possession, control of and/or unfettered access to his medical records, and that the aforementioned contracts required WCHCC, NYMC, and NYCCSMS/CCS to refer inmates to orthopedic specialists for complaints relating to the musculoskeletal system, and required their employees or agents to provide medical care within the scope of their medical licenses. (*Id.* ¶¶ 32–33.) Defendants' denial of medical care and the repeated failures to refer Plaintiff to an orthopedic contravened these contracts. (*Id.* ¶¶ 103, 105.) Plaintiff further alleges that Adler and Israel "knew or but for their deliberate indifference should have known of the WCJ's custom and practice of failing to provide medical care to inmates in the WCJ, but failed or refused to correct the same through training, supervision or discipline of Bailey–Wallace, Goldberg and/or Kadel, for grossly negligent, reckless or intentional conduct" (*Id.* ¶¶ 72, 73); and that "Westchester County, WCHCC, NYMC, Adler and/or Israel, knew or should have known that Bailey–Wallace and/or Goldberg engaged in professional misconduct with respect to other inmates, but failed to discipline or discharge either of the two defendants." (*Id.* ¶ 76.)

*Allegations Regarding the County's Custom and Practice of Failing to Protect Inmates*

**\*4** Plaintiff's alleges that his mistreatment arose from a custom and practice of subjecting inmates in the WCJ to excessive force and denying them adequate medical care. The SAC identifies two other lawsuits brought by WCJ inmates in 2007 alleging excessive force and denial of medical care, and incorporates those complaints by reference. (*Id.* ¶¶ 39–40.) [FN2] After these lawsuits were filed, in August 2007, the Department of Justice ("DOJ") notified Westchester County of its intent to investigate the WCJ under the Civil Rights of Institutionalized Persons Act ("CRIPA"). (*Id.* ¶ 43.) In February 2008, DOJ conducted an on-site inspection in the WCJ. (*Id.* ¶ 44.) DOJ conveyed its preliminary findings and recommendations to WCJ officials and staff, legal counsel for the County, and policy level officials of NYMC and WCHCC, including Adler and Israel. (*Id.* ¶¶ 44–45, 47–49.) On November 19, 2009, DOJ served its Findings Letter on Westchester County. The Findings Letter

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

provided in relevant part:

> FN2. Two such lawsuits are: *Smith v. Westchester County Dept. of Corr.,* 07 Civ. 1803(SAS) (S.D.N.Y.); *Jones v. Westchester County Dept. of Corrs. Med. Dept.,* 07 Civ. 3019(CM) (S.D.N.Y.).

WCJ has a pattern of failing to: (1) adequately protect inmates from harm and serious risk of harm from staff; and (2) provide inmates with adequate medical care. These deficiencies violate WCJ inmates' constitutional rights. We found evidence of a pattern and practice of use of excessive force by the Emergency Response Team.

We found that WCJ inadequately reviews use of force incidents to prevent a pattern of use of excessive force against inmates.

We find that WCJ fails to adequately document uses of force in its written reports, and thus fails to adequately protect inmates from harm.

WCJ fails to adequately discipline officers for using excessive force against inmates.... In our investigation, we found that WCJ fails to initiate disciplinary measures to correct officers who use excessive force.

[T]here are some areas where the medical care provided at WCJ falls below the constitutionally required standards of care. Specifically, we found the following deficiencies: ... an inadequate medical grievance process.

WCJ['s] policy for submitting grievances ... is not consistently implemented or effectively publicized. According to the Grievance Mechanism, CHS–A–11, inmate complaints must be written on an inmate Grievance Form and submitted to WCJ staff. During our on-site visit, however, many of the corrections officers in WCJ.'s housing units did not have Grievance Forms available for inmates if requested. Further, when inmates and jail staff were asked where an inmate could get a form to file a grievance, both the inmates and jail staff provided inconsistent responses.

(*Id.* ¶ 50.) The Findings Letter recommended a number of remedial measures. (*Id.*) As with the preliminary findings, the conclusion of the Findings Letter was received and discussed by each of the Defendants. (*Id.* ¶ ¶ 54–56.) In December 2009 and February 2010, Spano and Cheverko stated publicly that they disagreed with the DOJ report's findings. (*Id.* ¶¶ 53, 57.)

**\*5** In 2010 and 2011, after the Findings Letter was issued, five inmates of the WCJ filed suit alleging excessive use of force and/or denial of medical care.[FN3] (*Id.* ¶¶ 58–62.) Plaintiff incorporates the allegations in those complaints by reference.

> FN3. These suits are: *Barnes v. Westchester County,* 10 Civ. 2916(SCR) (S.D.N.Y.); *Barnes v. Westchester County,* 10 Civ. 2916(SCR) (S.D.N.Y.); *Bektic–Marrero v. Goldberg,* 11 Civ. 1781(CM) (S.D.N.Y.): *Bowen v. Patrick,* 11 Civ. 4799(RJH) (S.D.N.Y.); and *Michel v. Westchester County,* 15493/11 (Sup.Ct. Westchester County).

Plaintiff alleges, on information and belief, that, since January 1, 2006, Westchester County, WCHCC, and NYMC have not disciplined any employees or agents for use of excessive force or denial of medical care to inmates in the WCJ, and that Westchester County has promoted and/or failed to discipline correction officers despite having surveillance video revealing that its officers repeatedly violated inmates' constitutional rights. (*Id.* ¶¶ 64, 66). The Complaint further alleges that Westchester County failed to train or supervise DOC personnel in the use of force pursuant to generally accepted professional standards of correctional practice, and that Westchester County, WCHCC, NYMC and/or NYSCCSMS/CCS failed to train or supervise their employees or agents in how to respond to the negligent or intentional denial of medical care to inmates in the WCJ. (*Id.* ¶¶ 67–68, 70–71.)

### DISCUSSION

In deciding a motion pursuant to Rule 12(b)(6), the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

inferences in the plaintiff's favor. *Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007); *see also Asheroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### I. *County Defendants' Motion to Dismiss*

Plaintiff brings federal claims against the County Defendants for denial of medical care, use of excessive force, infringement of Plaintiff s free exercise rights, malicious prosecution, and unconstitutional conditions of confinement. Defendants argue that the SAC fails to state a cause of action for all but the excessive use of force claim. Defendants also move to dismiss all claims against the County on the grounds that Plaintiff failed to plead that his constitutional injury resulted from a policy or custom, as required by *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and all claims against several of the individual Defendants on the grounds that the Complaint fails to allege personal involvement.[FN4]

> **FN4.** The County Defendants also contend that Plaintiffs' federal claims are barred by his failure to exhaust his remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (West 2009). This statute, however, mandates exhaustion only for those actions filed by prisoners while they are "confined." The statute is inapplicable where, as here, the litigant commencing the action files suit after release from confinement. *See Grieg v. Goord,* 169 F.3d 165, 167 (2d Cir.1999) (per curiam); *accord*

*Talamantes v. Leyva,* 575 F.3d 1021, 1024 (9th Cir.2009); *Prescott v. Annetts,* 2010 WL 3020023, at *5 (S.D.N.Y. July 22, 2010); *Lopez v. City of New York,* 2009 WL 229956, at *3 (S.D.N.Y. Jan.30, 2009).

### A. *Denial of Medical Care Claim*

Though cognizable under the Fourteenth Amendment, claims for failure to provide adequate medical care brought by individuals in pre-trial detention are analyzed under the same standard as those brought by convicted prisoners under the Eighth Amendment. *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009). In order to establish an Eighth Amendment claim arising out of the provision of inadequate medical care, a prisoner must show "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The standard of deliberate indifference includes both an objective and subjective component. First, "the deprivation alleged by the prisoner must be in objective terms 'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's necessities.' " *Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir.1996) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Second, the defendants "must have acted with deliberate indifference in that they 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.' " *Id.* (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994)). To satisfy the subjective prong, a plaintiff must do more than simply plead that medical or prison personnel acted negligently. *See Estelle,* 429 U.S. at 105–06 ("inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference"). Rather, a plaintiff must plead that the defendant acted with a state of mind akin to criminal recklessness. *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003). Moreover, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998).

**\*6** While there is no bright-line test to measure the seriousness of a prisoner's medical condition, the Second

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

Circuit has set forth factors to "guide the analysis." *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003). These include: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (internal quotation marks and citations omitted). Plaintiff alleges that, while detained, he suffered "severe pain in his back, fingers and genitals," which limited his range of movement, and that, since his release, he continues to be treated for "severe pain and injury to his back and injury to his right hand." (SAC ¶¶ 95, 75.) Plaintiff's characterization of the pain he suffered which the Court must credit as true at this stage—is sufficient to meet the objective prong. *See, e.g., Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994) (hip condition that caused a prisoner "great pain over an extended period of time and ... difficulty walking" deemed objectively serious); *Nelson v. Rodas,* No. 01 Civ. 7887(RCC), 2002 WL 31075804, at *14 (S.D.N.Y. Sep.7, 2002). *adopted by* Order (S.D.N.Y. March 12, 2004) ("Severe back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment.").

However, the Complaint has failed to plead facts sufficient to meet the subjective prong. While Plaintiff alleges in the SAC that he never received an examination for the pain in his back, Plaintiff admitted in an earlier complaint regarding the same claim that he received over-the-counter medication to treat his pain and that he was provided an X-ray. (*See Pro Se* Complaint, attached as Ex. B to County Defs' Mot. to Dismiss); *Sulton v. Wright,* 65 F.Supp.2d 292, 295 (S.D.N.Y.2003) ("Admissions in earlier complaints remain binding when a plaintiff files subsequent pleadings."). Plaintiff's allegation that he was denied a referral to a specialist and an M.R.I. "because it was 'too expensive' and irrespective of his medical needs" cannot salvage his deliberate indifference claim. It is well settled that "the question whether ... [imaging] or additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment" and that the decision not to order certain diagnostic tests "does not represent cruel and unusual punishment." *Estelle v. Gamble,* 429 U.S. 97, 108, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Although that rule does not hold where treatment decisions are motivated by financial considerations instead of sound medical judgment,[FN5] Plaintiff has not pled any facts in support of his claim that treatment by a specialist or an M.R.I. was medically necessary. *See Chance,* 143 F.3d at 702 ("subjective belief that something more should have been done to treat his medical conditions" insufficient to state a deliberate indifference claim). Accordingly, the Court finds that the Complaint fails to state a claim for deliberate indifference to Plaintiff's medical needs.

> FN5. *See e.g., Chance,* 143 F.3d at 702 (a plaintiff may establish the requisite culpability for a deliberate indifference claim where the doctors choose a course of treatment "not on the basis of their medical views, but because of monetary incentives"); *Jones v. Westchester County Dep't of Corr. Med. Dept.,* 557 F.Supp.2d 408, 415 (S.D.N.Y.2008) (refusing surgery "for the sole purpose of shifting the cost of his care to another institution" sufficient to establish culpable mental state); *Bob v. Armstrong,* 02 Civ. 1785(RNC), 2003 WL 22682335, at *2 (D.Conn. Aug. 26, 2003) ("If financial considerations induced [defendant] to ignore a substantial risk of harm to [plaintiff], the subjective element of the deliberate indifference test may be met.").

**\*7** In light of the insufficiency of Plaintiff s federal claim for denial of medical care (Count IX), the Court declines pursuant to 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction of the state claims for medical negligence and infliction of emotional distress.

B. *Conditions of Confinement*

As with a claim predicated on the denial of medical care, a plaintiff claiming unconstitutional conditions of confinement under the Fourteenth Amendment must allege both (1) that he or she suffered a sufficiently, objectively serious deprivation and (2) that officials who caused the harm acted or failed to act with a sufficiently culpable state of mind. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Cuoco v.*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

*Moritsugu,* 222 F.3d 99. 106 (2d Cir.2000). As to the objective prong, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To recover on a claim of unconstitutional prison housing conditions, a plaintiff must allege that he or she was denied "the minimal civilized measure of life's necessities," *id.* at 347, such as the "basic human needs" of "food, clothing, shelter, medical care and reasonable safety." *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (internal quotation marks and citation omitted). Moreover, a plaintiff alleging unconstitutional conditions of confinement must show something more than mere negligence; instead, a plaintiff must allege that an "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.

Plaintiff alleges that the conditions of his SHU cell were "deplorable"-that the cell "reeked of excrement and vomit, food was splattered on the walls, mold was readily visible and growing on the walls, sink and shower" and that, despite the "severely cold temperatures," Plaintiff was denied adequate blankets. (SAC ¶ 94.) While foul odors and mold alone do not implicate the Eighth or Fourteenth Amendments, the Supreme Court has stated that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone ... for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Thus, the allegation that Plaintiff was kept in severely cold temperatures without adequate protection satisfies the objective prong.

However, Plaintiff's conditions of confinement claim fails for a separate reason: the Complaint does not allege that Plaintiff complained or otherwise notified prison personnel about the frigid temperatures or the lack of blankets. Nor does the Complaint allege that Defendants were aware of these conditions in the SHU. *See Mitchell v. Keane,* 974 F.Supp. 332, 334 (S.D.N.Y.1997) (denying motion to amend on ground that allegation involving sewage dripping from cell ceiling failed to state a claim for a violation of prisoner's Eighth Amendment rights because proposed amended complaint did not include allegation that a correctional official or officer was aware of the condition in prisoner's cell), *aff'd,* 175 F.3d 1008

(2d Cir.1999). Accordingly, Plaintiff's conditions of confinement claim (Count V) is dismissed.

C. *Free Exercise*

**\*8** Plaintiff alleges that County Defendants Enders and Powers violated his free exercise rights under the First Amendment by "placing Plaintiff in the [SHU] on the basis of fraudulent documents with knowledge that he would be denied access to his personal Bible and Sunday group worship," and "unreasonably denying him the same as a result of being housed in the [SHU]." (SAC ¶ 119.) Defendants move to dismiss this claim, arguing that Plaintiff's placement in the SHU "provides legal justification for any restriction as to [his] free exercise rights." FN6 (County Defs' Mot. at 24.)

> FN6. Plaintiff also brings a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). 42 U.S.C. § 2000–cc1(a). Defendants have not moved to dismiss that claim.

Defendants' broad pronouncement is indefensible. It is "well-established that prisoners have a constitutional right to participate in congregate religious services," *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993), and that restrictions on free exercise rights are only permissible where they are "reasonably related to legitimate penological interests." *Pugh v. Goord,* 571 F.Supp.2d 477, 494 (S.D.N.Y.2008) (quoting *Turner v. Safley,* 482 U.S. 78, 87, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). The Second Circuit has admonished that it is "error to assume that prison officials [are] justified in limiting [a detainee's] free exercise rights simply because [he or she is] in disciplinary confinement." *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir.1989); *see also LaReau v. MacDougall,* 473 F.2d 974, 979 n. 9 (2d Cir.1972) ("[N]ot every prisoner in segregation lawfully can be prevented from attending church services in the chapel ... [because] [n]ot all segregated prisoners are potential troublemakers."). Insofar as Plaintiff was placed in the SHU based on allegedly spurious disciplinary charges, there can be no legitimate penological rationale for the confiscation of his Bible and the refusal to allow him to participate in services.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

Accordingly, the Court finds that the Complaint adequately pleads a free exercise claim.

D. *Malicious Prosecution Claim*

Defendants also move to dismiss Plaintiff's malicious prosecution claim. To state a claim for malicious prosecution a plaintiff must allege: " '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir.2003) (quoting *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997)). Plaintiff has alleged that Powers, Haspil, O'Dell, Johnson, Enders, and ERT Members # l-# 3 [FN7] submitted false disciplinary charges against Plaintiff, as a result of which Plaintiff was charged criminally. Plaintiff further alleges that the charges—of which he was ultimately acquitted were part of an effort to cover up the cause of the physical abuse Plaintiff suffered. These allegations suffice to state a claim for malicious prosecution. Defendant's sole argument in its motion to dismiss the malicious prosecution claim is that the District Attorney—not the Defendants—was responsible for initiating the prosecution. However, "defendants cannot hide behind the decision of the DA to prosecute when it was defendants who allegedly fed the facts" that resulted in the decision to bring charges. *Blake v. Race,* 487 F.Supp.2d 187, 211 (E.D.N.Y.2007); *see also Zahrey v. Coffey,* 221 F.3d 342, 352 (2d Cir.2000) ("[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty."); *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision."). Accordingly, Defendants' motion to dismiss the malicious prosecution claim is denied.

> FN7. The Complaint asserts a malicious prosecution claim against Goldberg and Kadel as well. However, the Complaint is devoid of any

factual allegations supporting Goldberg and Kadel's participation in the filing of the disciplinary report. For this reason, and the reasons stated below, all claims against Goldberg and Kadel are dismissed.

E. *Conspiracy Claim*

**\*9** Defendants also argue that the allegations in the Complaint are insufficient to support a conspiracy claim. A conspiracy claim under 42 U.S.C. § 1983 must allege; "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 67, 72 (2d Cir.1999). Moreover, "[i]t is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.' " *Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir.2011) (quoting *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993))

The Complaint alleges facts from which a Court might draw an inference that Powers, Haspil, O'Dell, Johnson, Enders, and ERT Members # l-# 3 agreed among themselves to submits false reports about the assault against Plaintiff with the intent of causing disciplinary and criminal charges to be preferred against him. However, as employees of the WCJ, the same municipal entity, these Defendants were legally incapable of conspiring together. *See Herman v. Moore,* 576 F.2d 453, 459 (2d Cir.1978) ("there is no conspiracy [under 42 U.S.C. § 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment"); *Anemone v. Metropolitan Transportation Authority,* 419 F.Supp.2d 602, 604 (S.D.N.Y.2006) (applying the intracorporate conspiracy doctrine articulated in *Moore* to actions brought under 42 U.S.C. § 1983). The Complaint also alleges that medical personnel employed by NYMC participated in a conspiracy to deprive Plaintiff of his constitutional rights, but provides no factual support for these conclusory allegations. Accordingly, the conspiracy claims are dismissed.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

F. *Liability of County and Certain Individual Defendants*

1. *Municipal Liability*

Defendants move to dismiss all claims against the County. A municipality may not be held liable under section 1983 on the basis of *respondeat superior. Monell v. Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, at the pleading stage, a plaintiff must allege facts establishing that the constitutional violation was caused by a municipal policy or custom; that is, that the policy or custom was the actual "moving force" behind the alleged wrongs. *See id.; Bd. of the County Comm'rs v. Brown,* 520 U.S. 400 (1997). A plaintiff may plead a municipal policy or custom by alleging: "(1) a formal policy, promulgated or adopted by the entity; or, (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." *Bektic–Marrero v. Goldberg,* 850 F.Supp.2d 418, 430 (S.D.N.Y.2012) (citing *Jouthe v. City of New York,* 2009 WL 701110, at *7 (E.D.N.Y. March 10, 2009)). The Complaint adequately pleads the existence of a policy or custom of tolerating the use of excessive force under the third method cited above. A plaintiff may plead liability under the third prong by showing that "the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 126–27 (2d Cir.2004). To show that the municipality was deliberately indifferent to the improper conduct of its employees, "the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). A plaintiff may establish obviousness by showing that there were "repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id; see also, Fiacco v. City of Rensselaer,* 783 F.2d 319, 328 (2d Cir.1986) ( "[w]hether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force").

**\*10** Plaintiff relies primarily on the DOJ report, which documented extensive constitutional deficiencies in the provision of medical care and the protection of inmates against the use of excessive force. The DOJ report's findings were based on on-site visits conducted in February 2008; its contents were published in November 2009. Defendants contend that the DOJ report is, therefore, too dated to establish the existence of a policy or custom as of March 9, 2010–the date on which Plaintiff was allegedly assaulted by the guards. This argument is unavailing. The Court is obligated to draw all reasonable inferences in Plaintiff's favor and thus takes as true for purposes of this motion practice the assertion that the deficiencies found by the DOJ existed at the time of the alleged assault against Plaintiff. *Cf. Jund v. Town of Hempstead,* 941 F.2d 1271, 1288 (2d Cir.1991) (there is a "general presumption of the continuance of a status or condition once proved to exist") (internal quotation marks omitted). That presumption of continuity is fortified in this case by the fact that County officials publicly disputed the report's conclusion, and by the steady stream of suits filed against the County alleging excessive use of force in the WCJ. Accordingly, the motion to dismiss the surviving claims against the County is denied.

2. *Individual Defendants Spano, Cherverko, Amicucci, Diaz, Bailey Wallace, and Israel*

The personal involvement of a defendant is an essential element of a section 1983 claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). A supervisor cannot be held liable simply for being a supervisor, as there is no *respondeat superior* liability under section 1983. *See Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). The Second Circuit has held that supervisory liability may attach under the following circumstances: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez v. Keane,* 341 F.3d 137, 145 (2d Cir.2003) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

There is disagreement within this district as to whether all five *Colon* categories of supervisor liability remain viable after the United States Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 676–77, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and the Second Circuit has yet to address the issue. *See, e.g., Reynolds v. Barrett,* 685 F.3d 193, n. 14 (2d Cir.2012) (noting skepticism as to whether all *Colon* factors survived *Iqbal* but not deciding the issue). The Court agrees with the apparent majority view that where, as here, "the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply." *Sash v. United States,* 674 F.Supp.2d 531, 544 (S.D.N.Y.2009); *Inesti v. Hicks,* 11 Civ. 2596(PAC), 2012 WL 2362626 at *11 (S.D.N.Y. June 22, 2012), *adopted by,* 2012 WL 3822224 (S.D.N.Y. Sept.4, 2012); *Martinez v. Perilli,* No. 09 Civ. 6470(WHP), 2012 WL 75249, at *4 (S.D.N.Y. Jan.5, 2012); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010), aff'd, 462 F. App'x 79 (2d Cir.2012); *but see Bellamy v. Mount Vernon Hosp.,* No. 07 Civ. 1801(SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal'* s muster-a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred").

**\*11** The Complaint alleges facts demonstrating widespread use of excessive force in the WCJ. It also alleges that Cheverko "held several positions with the responsibility of supervising, investigating and/or overseeing WCJ's Emergency Response Team" (SAC ¶¶ 36, 37), that Amicucci was the Warden of WCJ (and thus vested with supervisory control), and that both "knew or

but for their deliberate indifference should have known of ERT's custom and practice of use of excessive force, but failed to correct same through training, supervision or discipline due to their grossly negligent, reckless or intentional conduct." (SAC ¶ 68) These allegations fit squarely within the fourth and fifth *Colon* categories. However, the Complaint does not allege any facts indicating that those individuals were personally involved with the decision to deprive Plaintiff of his Bible or bar him from attending group services. Accordingly, the Court finds that the SAC adequately pleads claims against Cheverko and Amicucci as to the excessive force claim only. All other claims against those individuals are dismissed.

The Complaint also alleges that Diaz was Warden of the WCJ, that he was responsible for supervising, investigating and/or overseeing WCJ's Emergency Response Team, and that he was deliberately indifferent to the use of excessive force. However, the Complaint alleges that Diaz became Warden in June 2010, months after the alleged assault had taken place. The Complaint does not allege any facts supporting Diaz's personal involvement in any of the other acts underlying Plaintiff's remaining claims. Therefore, all claims against Diaz are dismissed.

The Complaint does not allege any facts supporting Spano's liability under any of the *Colon* factors. To the contrary, the Complaint pleads that Spano left his position at the DOC in December 2009, several months *before* the events underlying this Complaint took place. Accordingly, all claims against Spano are dismissed.

Because the Complaint fails to state a claim for unconstitutional denial of medical care, the claims against Bailey–Wallace and Israel are also dismissed.

## II. *NYMC and NYCCSMS/CCS' Motions to Dismiss*

Plaintiff brings federal and state causes of action against NYMC and NYCCSMS/CCS, and their employees Adler, Goldberg, Kadel, and Nurse Noe, arising out of the denial of medical care. The federal claims against these Defendants are dismissed for the reasons stated above. In light of the Court's dismissal of Plaintiffs federal claims,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 4477241 (S.D.N.Y.)

(Cite as: 2012 WL 4477241 (S.D.N.Y.))

the Court declines pursuant to 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction of the state claims against these Defendants.

*CONCLUSION*

For the foregoing reasons, the County Defendants' motion to dismiss the Second Amended Complaint is granted with respect to Plaintiffs denial of medical care (Count II), conditions of confinement (Count V), and conspiracy claims. FN8 The Court declines to exercise supplemental jurisdiction of the state claims for medical negligence and infliction of emotional distress (Count IX). The County Defendants' motion to dismiss is also granted with respect to Diaz, Spano, Bailey–Wallace, and Israel in all respects. The Clerk of Court is directed to terminate Diaz, Spano, Bailey–Wallace, and Israel as defendants in this action. The County Defendants' motion is denied in all other respects.

FN8. Plaintiff does not allege conspiracy in a stand-alone count.

**\*12** NYMC and NYCCSMS/CCS's motions to dismiss the federal claims in the Second Amended Complaint are granted in their entirety. The Court declines to exercise supplemental jurisdiction of the state claims against NYMC, NYCCSMS/CCS, and the individual Defendants employed by these organizations; those claims are therefore dismissed without prejudice to re-filing in state court. The Clerk of Court is directed to terminate NYMC, NYCCSMS, CCS, Adler, Goldberg, Kadel, and Nurse Noe as defendants in this action.

An Initial Pre–Trial Conference with respect to the remaining claims will be held in this matter on **November 2, 2012 at 3:45p.m.**

This Memorandum Order resolves docket entries nos. 66, 69, and 72.

SO ORDERED.

S.D.N.Y.,2012.

Shepherd v. Powers
Slip Copy, 2012 WL 4477241 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 1232227 (W.D.N.Y.)

(Cite as: 2007 WL 1232227 (W.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Domingo BORGES, Plaintiff
v.
Superintendent Michael McGINNIS, et al., Defendants.
No. 03-CV-6375 CJS.

April 26, 2007.
Domingo Borges, Marcy, NY, pro se.

Gary M. Levine, New York State Office of the Attorney General, Rochester, NY, for Defendants.

DECISION AND ORDER

CHARLES J. SIRAGUSA, United States District Judge.

**\*1** This is an action in which the plaintiff, a prison inmate, is suing concerning his conditions of confinement, pursuant to 42 U.S.C. § 1983. Now before the Court is defendants' motion [# 45] for summary judgment. For the reasons that follow, the application is granted and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following facts are taken from defendants' Rule 56 Statement of Facts, which is uncontested.[FN1] At all relevant times, plaintiff was an inmate at Southport Correctional Facility ("Southport"). On or about November 24, 2001, corrections staff at Southport observed plaintiff receive from a visitor (his mother) what appeared to be contraband drugs. Suspecting that plaintiff had subsequently ingested the contraband, corrections staff placed him in an observation cell, where he remained from 1:00 p.m. on November 24, 2001 until 12:20 p.m. on November 27, 2001. Plaintiff was videotaped during this entire period, except when he covered the camera, and in support of the instant motion, defendants submitted to the Court 10 VHS videotapes of plaintiff in the cell.

FN1. "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Local Rule 56.1(c).

The observation cell was "a strip cell which is used for one on one drug watch." (Pl.Dep.19). According to Department of Correctional Services' ("DOCS") Directive 4910, inmates suspected of ingesting contraband are kept in such observation rooms until they twice pass stools that are negative for contraband. (McGinnis Aff. [# 56], Ex. A). Plaintiff's observation cell contained only a sleeping platform. There was not a functioning toilet, though plaintiff was provided with a bedpan when he needed to urinate or defecate.

When he was placed in the isolation cell, plaintiff was given a paper gown, paper shoes, and a thin mattress. Plaintiff requested that he also be given a blanket, to which he was entitled pursuant to Directive 4910. However, staff refused to provide a blanket, because they were unaware that it was required by Directive 4910. More specifically, Corrections Officer ("C.O.") Scott Marshall ("Marshall") states, in an affidavit, that he inadvertently failed to provide plaintiff with a blanket, because he thought that plaintiff was supposed to be treated similarly to inmates who are on suicide watch, who do not receive blankets. (Marshall Aff. [# 55] ).

On or about November 25th, plaintiff punched a glass window in his cell. Though he did not damage the glass, plaintiff later indicated that he thought his hand was broken. A staff nurse, Carmen Miller, R.N. ("Miller"), examined plaintiff's hand on November 26th and reported "zero swelling, zero deformity. Good range of motion. No apparent distress." (Pl.Dep.71). There is no indication that plaintiff's hand actually was fractured, or that he suffered anything more than temporary discomfort from punching the window.

Early on November 26, 2001, plaintiff covered the video camera monitoring his cell with a piece of his paper

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1232227 (W.D.N.Y.)

(Cite as: 2007 WL 1232227 (W.D.N.Y.))

gown. Corrections staff gave plaintiff several direct orders to remove the obstruction, but he refused. Later that day, plaintiff asked Sergeant Gary Morse ("Morse") for a blanket. Morse spoke with Captain Joseph Bellinier ("Bellnier"), who indicated that, pursuant to Directive 4910, plaintiff was entitled to receive a pillow, sheets, and blanket. Bellnier also issued a written memorandum to that effect. However, as a result of plaintiff covering the video camera and refusing the direct orders to remove the obstruction, another supervisor, Captain William Wilcox ("Wilcox"), placed a deprivation order against plaintiff, depriving him of "bed linen, pillow, [and] blankets," though he was allowed to keep his mattress and gown. (Wilcox Aff. [# 68] Ex. A). In other words, although plaintiff would have received a blanket pursuant to Bellnier's order had he not covered the camera, he did not receive a blanket due to the resulting deprivation order.

**2** Once plaintiff removed the paper obstruction from the camera, Sergeant Morse brought him hot water, a basin, soap, washcloth, toothbrush, and toothpaste. (Pl.Dep.57). Later that day plaintiff returned the hygiene items, and corrections staff found a balloon containing marijuana hidden inside the toothpaste tube. (Bellnier Aff. [# 50], Ex. B, p. 4). Plaintiff was later found guilty of possessing marijuana at a tier disciplinary hearing, and served 12 months in the Segregated Housing Unit. (Pl.Dep.62-63).

In addition to the personal hygiene items detailed above, corrections staff also provided plaintiff with his regular meals during his stay in the observation room, though he alleges that he was denied breakfast on the morning of November 26th. (Pl.Dep.65-66).

During the three-day period that plaintiff was in the isolation cell, outside temperatures at Southport ranged between 62 and 40 degrees Fahrenheit. Plaintiff contends that a window in his cell was open during this period. However, while it is undisputed that plaintiff complained about the cell being cold, there is no indication that he complained specifically about the window being open. Plaintiff does not know what the temperature was in the cell, but he estimates that it was "probably 50 degrees, around there. Probably less." (Pl.Dep.27). In general, he contends that it was "cold." (Pl.Dep.24-26). Defendants,

on the other hand, indicate that the indoor temperature during that period was not extremely cold. (Pl.Dep.26). Plaintiff did not suffer any physical injuries as a result of being kept in the isolation cell, except that he claims to have caught a cold, which lasted "a couple of days." (Pl.Dep.58-60).

Corrections officers observing plaintiff made notes in a log every 15 minutes during his stay in the observation room. (Bellnier Aff. [# 50] Ex. C). Many, if not most, of the entries indicate that plaintiff was lying on the bed, asleep or appearing to be asleep. Other entries indicate that plaintiff was exercising, walking around the cell, sitting on the floor, or looking out the window. (*Id.*). These observations appear accurate, based on the Court's viewing of randomly-selected portions of the videotape exhibits. Plaintiff was removed from the cell temporarily on the morning of November 27th, so that the cell could be cleaned.

Plaintiff had no problems or "bad blood or ill will" with any of the defendants prior to being placed in isolation. (Pl.Dep.8-9). Although plaintiff contends that corrections staff denied his requests for a blanket, he does not contend that they verbally abused him or used any type of epithet toward him.

Defendants filed the subject summary judgment motion on December 28, 2005. In support of the motion, defendants submitted affidavits from the individual defendants, the aforementioned video tapes, photographs of the cell, log notes, climatological data, and plaintiff's deposition transcript. The affidavits of Superintendent Michael McGinnis ("McGinnis"), Deputy Superintendent Michael Corcoran ("Corcoran"), Assistant Deputy Superintendent Lawrence Weingartner ("Weingartner"), Lt. David Augustine ("Augustine"), Lt. Richard Donahue ("Donahue"), and Lt. Charles Marshall ("Marshall") all essentially indicate that they did not personally know that plaintiff was in the observation cell or that he was complaining of being cold. On the other hand, Bellnier, Wilcox, Morse, Miller, Marshall, Sgt. Richard Moriarty ("Moriarty"), Sgt. John Morton ("Morton"), C.O. William Meck ("Meck"), C.O. James O'Herron ("O'Herron"), C.O. Kevin Qualey ("Qualey"), C.O. Lynn Rice ("Rice"), C.O. Douglas Westervelt ("Westervelt"), C.O. Alan Wheeler

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1232227 (W.D.N.Y.)

(Cite as: 2007 WL 1232227 (W.D.N.Y.))

("Wheeler"), and C.O. Byron Potter ("Potter"), all essentially indicate that they knew that plaintiff was in the observation cell, but deny that the cell was dangerously cold, though some acknowledge that plaintiff complained to them of being cold. And finally, defendant Thomas Giltner ("Giltner") indicates that he was not employed at Southport during the relevant three-day period. Defendants contend that: 1) all claims against them in their official capacities must be dismissed; 2) plaintiff has not established a factual basis for imposing supervisory liability; and 3) plaintiff's conditions of confinement did not violate the Eighth Amendment.

**\*3** As part of defendants' motion, they filed and served a "Notice to Pro Se Litigants Opposing Summary Judgment" as required by Local Rule 56.2 and *Irby v. New York City Transit Authority,* 262 F.3d 412 (2d Cir.2001). *See,* Notice [# 71]. The Court subsequently issued a Motion Scheduling Order [# 72], which directed plaintiff to file and serve a response on or before February 28, 2006. Plaintiff has never filed a response to the summary judgment motion, although he has filed an amended complaint, which amended the caption of the action, as well as a motion for appointment of counsel, which was denied.

### ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c).* A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's

claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir.1996)(*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied,* 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson, 477 U.S. at 249; see also,* FED.R.CIV.P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED.R.CIV.P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

**\*4** At the outset, the Court notes that, because plaintiff is proceeding *pro se,* the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). However, plaintiff did not respond to defendants' motion, even though he was specifically advised of the requirements of Rule 56. In that regard, the Court notes that Rule 56(e) is clear that, when a properly supported summary judgment motion is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Based upon the entire record, the Court does not believe that plaintiff's failure was inadvertent. Rather, it appears that the facts of his claim

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1232227 (W.D.N.Y.)

(Cite as: 2007 WL 1232227 (W.D.N.Y.))

are truly not in dispute, and that the motion can be resolved as a matter of law.

Turning, then, to the merits of plaintiff's claim, he is suing pursuant to 42 U.S.C. § 1983. The principles of law applicable to such claims are well settled:

In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, e.g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977).

* * *

An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995).

Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122, 127 (2d Cir.2004).

Here, plaintiff contends that defendants violated his Eighth Amendment rights by keeping him in a cold cell for three days without a blanket. For claims alleging unconstitutional conditions of confinement, it is clear that

*5 a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). The Second Circuit has stated the elements of such a claim as follows:

While the Eighth Amendment's prohibition against cruel and unusual punishment does not mandate comfortable prisons, the conditions of confinement must be at least humane. In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety. A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates.

Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir.2001) (citations and internal quotations omitted).

As to the objective prong of the analysis set forth above, "an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold." Id. (citing Corselli v. Coughlin, 842 F.2d 23 (2d Cir.1988)). However, an inmate cannot establish an Eighth Amendment claim merely by establishing that he was uncomfortably cold for a short period. For example, in Grant v. Riley, No. 89 Civ. 0359(MBM), 1993 WL 485600 at *4 (S.D.N.Y. Nov.24, 1993), the court granted summary judgment for defendants, stating:

Plaintiff's Eighth Amendment claim is based on the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1232227 (W.D.N.Y.)

(Cite as: 2007 WL 1232227 (W.D.N.Y.))

allegation that there was no heat in his cell for at least 3 days. Plaintiff asserts that he had no coat, bedding or blankets for over nine hours, and that cold wind blew through the broken windows, which were incompletely covered with loose plastic. This Circuit has found that "deliberate exposure of inmates by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment." *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988). However, plaintiff does not claim that any defendant deliberately subjected him to the cold, and has alleged only a three-day period of exposure. *See Roach v. Kligman,* 412 F.Supp. 521, 527 (E.D.Pa.1976) (short period in cold, leaky cell does not violate Eighth Amendment). Furthermore, plaintiff did not suffer any harm as a result of these conditions. Plaintiff thus has failed to allege treatment that offends "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and has not stated an Eighth Amendment claim.

**\*6** (Some internal quotation marks omitted); *see also, Smith v. Burge,* No. 9:03-CV-0955 (LEK/GHL), 2006 WL 2805242 at \*7 (N.D.N.Y. Sep.28, 2006) (" "Heat is a basic human need; and claims of lack of heat may state a claim. If, however, the condition is not sufficiently prolonged or severe, it does not rise to the level of an Eighth Amendment violation.") (citations omitted).

In this case, plaintiff was kept in an observation cell for three days, because corrections staff were attempting to recover contraband which plaintiff had ingested during a visit with his mother. Defendants' suspicions in this regard were well-founded, and they eventually recovered a quantity of marijuana inside a balloon, which apparently plaintiff had swallowed. Although plaintiff was not given a blanket, he was given a paper gown, paper slippers, and a thin mattress. In this regard, plaintiff was treated in the same manner as inmates on suicide watch. As to the mattress, the Court notes that it was a thin mattress pad that plaintiff actually used as both a shawl and a blanket. Plaintiff spent much of his time lying on the bed, covered with the "mattress," and apparently asleep. For reasons that no one has explained, a window in the cell was open, and the cell temperature was around 50 degrees, which

undoubtedly and unfortunately made plaintiff uncomfortable. Plaintiff was provided with meals, personal hygiene items, and medical attention. Moreover, it is undisputed that plaintiff would have been provided with a blanket on November 26th if he had not violated facility rules by covering the security camera.

Overall, plaintiff does not allege that he suffered anything more than frustration and discomfort as a consequence of the coldness of his cell. Thus, his claim does not rise to the level of a condition of confinement that violates the Eighth Amendment. Moreover, even if plaintiff could establish the objective element of an Eighth Amendment claim, he has not submitted evidentiary proof in admissible form to refute defendants' affidavits averring that they were not subjectively deliberately indifferent to his condition. Further, even assuming, *arguendo* that plaintiff had established an Eighth Amendment violation as to some defendants, which he has not done, the official capacity claims and supervisory liability claims would nevertheless have to be dismissed, as plaintiff has not established any basis for them. Finally, Giltner would be entitled to summary judgment in any event, because there is no evidence that he was employed at Southport on the relevant dates.

CONCLUSION

For all of the foregoing reasons, defendants' summary judgment motion [# 45] is granted and this action is dismissed.

So Ordered.

W.D.N.Y.,2007.

Borges v. McGinnis
Not Reported in F.Supp.2d, 2007 WL 1232227 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 1174088 (N.D.N.Y.)

(Cite as: 2005 WL 1174088 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Leanue DAVIS; Oliver King; Dewitt Gibson; Plaintiffs,
v.
Harry BUFFARDI; Sergeant Greenwald; Gary James;
E. Jacobs; Mike Nealon; C.O. Sheldon; Dr. Dufrense;
Defendants.
No. 0:01CV0285(GLS/GJD).

May 4, 2005.
Leanue Davis, Malone, NY, pro se.

Dewitt Gibson, Auburn, NY, pro se.

James A. Resila, Carter, Conboy Law Firm, William J.
Greagan, Goldberg, Segalla Law Firm, Marie Flynn
Danek, Phelan, Phelan Law Firm, Gerald D. D'Amelia, Jr.,
Burke, Scolamiero Law Firm, Albany, NY, Brian
Breedlove, Tracy M. Larocque, Pennock, Breedlove Law
Firm, Clifton Park, NY, for Defendants.

MEMORANDUM AND ORDER

MAGNUSON, J.

*1 This matter is before the Court [FN1] on Defendants'
Motions for Summary Judgment. Plaintiffs have not
responded to this Motion within the deadlines imposed by
the Court and have thus failed to create a genuine issue of
material fact. Therefore, and for the reasons that follow,
Defendants' Motions are granted.

> FN1. This case was originally assigned to the
> Honorable Gary L. Sharpe. Pursuant to an
> inter-circuit assignment under 28 U.S.C. §
> 294(d), the undersigned is now the Judge of
> record in this case.

BACKGROUND

Plaintiffs Leanue Davis and Dewitt Gibson were

imprisoned at the Schenectady County Jail ("SCJ") in
2001.[FN2] They claim that their constitutional rights were
violated while they were imprisoned at SCJ. Defendants
are: (1) Harry Buffardi, Chief Administrator and Sheriff
for SCJ; (2) Al Greenwald, Grievance Sergeant and
Grievance Coordinator at SCJ; (3) Gary James, Sergeant
at SCJ; (4) Emerich Jacobs, Corrections Officer at SCJ;
(5) Mike Nealon, Corrections Officer at SCJ; (6) Adam
Sheldon, Corrections Officer at SCJ; and (7) Dr. Dufrense,
Medical Director at SCJ.

> FN2. Plaintiff King was dismissed in March
> 2003 (see Clerk Doc. No. 110).

Plaintiffs' Amended Complaint states sixteen different
causes of action. [FN3] These causes of action argue that
Defendants: (1) failed to provide sufficient access to legal
and writing materials necessary to petition the Court; (2)
interfered with Plaintiffs' access to the internal grievance
process; (3) discriminated against Plaintiffs; (4) retaliated
against Plaintiffs for exercising their legal rights; (5)
physically assaulted Plaintiff Davis on various occasions;
and (6) provided Plaintiff Davis with inadequate medical
care. (See Am. Compl.) Plaintiffs bring their claims under
42 U.S.C. § 1983. Defendants Buffardi, Greenwald,
James, Jacobs, Nealon and Sheldon (collectively, "SCJ
Defendants") bring a collective Motion for Summary
Judgment. Dr. Dufrense also brings his own Motion.

> FN3. Only nine of the sixteen causes of action in
> the Amended Complaint refer to Plaintiff
> Gibson, while all sixteen causes of action refer to
> Plaintiff Davis.

DISCUSSION

A. Standard of Review

Summary judgment is proper if there are no disputed
issues of material fact and the moving party is entitled to
judgment as a matter of law. Fed.R.Civ.P. 56(c). The
Court must resolve ambiguities and draw all reasonable
inferences in favor of the nonmoving party. Nora
Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1174088 (N.D.N.Y.)

(Cite as: 2005 WL 1174088 (N.D.N.Y.))

736, 742 (2d Cir.1998). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 323 n. 4. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

B. SCJ Defendants

SCJ Defendants seek dismissal of Plaintiffs' claims. As noted, neither Plaintiff Davis nor Plaintiff Gibson have responded to the Motion, and therefore there are no issues of fact that remain for trial. Furthermore, 42 U.S.C. § 1983 requires Plaintiffs to demonstrate that an individual acting under color of state law deprived Plaintiffs of a constitutionally protected right. *See Washington v. County of Rockland,* 373 F.3d 310, 315 (2d Cir.2004). Plaintiffs' claims fail on the merits because Plaintiffs fail to establish any violation of a constitutionally protected right.

1. *Access to the Courts*

**\*2** Plaintiffs contends that their constitutional rights were violated because the law library at SCJ was insufficient. (Am.Compl.¶ 19.) They also argue that SCJ Defendants allowed public defenders to remove pertinent legal materials from the law library, frustrating their right to a fair trial. (*Id.* ¶ 20.) Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct.

2174, 135 L.Ed.2d 606 (1996) (quoting *Bounds,* 430 U.S. at 825.) Thus, to demonstrate a constitutional violation, the prisoner must prove that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* In this case, Plaintiffs have offered no proof that the alleged insufficiencies in the law library or the purported actions of the public defender's office frustrated their efforts to bring a legal claim. Therefore, there is no constitutional violation and Plaintiffs' claim on this point fails.

2. *Right of Visitors*

Plaintiffs claim that SCJ Defendants violated their constitutional rights because their visitors were subjected to an oral cavity search. (Am.Compl.¶¶ 5, 21.) Under 42 U.S.C. § 1983, each Plaintiff must demonstrate a real or threatened injury to himself, not to third parties. *See, e.g., Morris v. Lindau,* 196 F.3d 102, 113 (2d Cir.1999) (citing *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Plaintiffs further allege that their constitutional rights were violated because they were not permitted to utilize the inmate grievance process in regards to the searches of these visitors. However, New York law only permits prisoners to seek redress in an individual capacity. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.3(b). In short, Plaintiffs have failed to show a constitutional violation and their claim on this point fails.

3. *Blankets, clothing and temperature*

Plaintiffs claim that they were denied extra blankets and clothing when SCJ's boiler went out in February 2001. Plaintiffs were pretrial detainees at that time. Challenges to prison conditions by a pretrial detainee are evaluated under the Due Process Clause of the Fourteenth Amendment. *See Benjamin v. Fraser,* 343 F.3d 35, 49 (2d Cir.2003). Plaintiffs must prove that SCJ Defendants were deliberately indifferent and that Plaintiffs were subjected to actual or imminent substantial harm. *Id.* at 50-51.

The SCJ boiler broke down for a ten day period in February 2001. Plaintiffs submit no evidence that SCJ Defendants were deliberately indifferent to this condition, or that the temperature in SCJ was so cold that Plaintiffs experienced substantial harm. Because Plaintiffs fail to demonstrate a constitutional deprivation, their claim on this point also fails.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1174088 (N.D.N.Y.)

(Cite as: 2005 WL 1174088 (N.D.N.Y.))

4. *Discrimination*

**\*3** Plaintiff Davis claims that Defendant Sergeant James discriminated against him when he referred to him as a "monkey" and told him that he did not need medical treatment. (Am.Compl.¶ 23.) However, Plaintiff Davis testified that Defendant James did not say this directly to him, that Defendant James was standing outside his hospital room when he made the remark, and that Plaintiff Davis was unaware to whom Defendant James made this statement. (Greagan Aff. Ex. H. at 23-25.) Moreover, allegations of "verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995). Plaintiff Davis's bald allegations do not demonstrate a constitutional violation, and therefore fail.

5. *Pat Frisk*

Plaintiffs claim that their constitutional rights were violated when Defendant Corrections Officer Jacobs performed a pat frisk. (Am.Compl.¶ 24.) Plaintiffs allege that Defendant Jacobs "used his two fingers to slide up and down the crevice of the buttocks." (*Id.*) As noted, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees. Plaintiffs must demonstrate that SCJ Defendants were deliberately indifferent and that their actions caused actual or imminent substantial harm. *See Benjamin,* 343 F.3d at 50-51. Substantive due process prohibits the state actors from engaging in conduct that "shocks the conscience." *See United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In similar cases, courts have evaluated "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *See Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (applying to post-trial detainee under Eighth Amendment); *see also United States v. Walsh,* 194 F.3d 37, 48 (2d Cir.1999) (applying *Hudson* analysis to pretrial detainees under Fourteenth Amendment).

Plaintiffs' allegation of harassment that occurred on one isolated occasion does not arise to a constitutional violation that shocks the conscience. Indeed, "the line between a pat down and a fondle is too insubstantial" to support a constitutional claim. *Friedman v. Young,* 702 F.Supp. 433, 436 (S.D.N.Y.1988); *see also Boddie v.*

*Schneider,* 105 F.3d 857, 861 (2d Cir.1997) (a small number of incidents in which prisoner was allegedly harassed and touched without his consent was not objectively sufficiently serious to state cognizable constitutional claim). Therefore, Plaintiffs' claim on this point fail.

6. *Access to inmate grievance process*

Plaintiff Davis claims that Defendants Buffardi and Greenwald discriminated against him by refusing to permit him to seek redress under the inmate grievance program. (Am.Compl.¶¶ 25, 34.) Although Plaintiff Davis has a constitutional right to access the courts, participation in an inmate grievance process is not a constitutionally protected right. *See Shell v. Brzezniak,* -F. Supp.2d-, 2005 WL 914437, at *4 (W.D.N.Y. Apr.21, 2005); *see also Cancel v. Goord,* File No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (citing *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991)). Further, there is simply no evidence in the record to support Plaintiff Davis's allegations. Therefore, absent proof of a constitutional violation, his claims on this point fail.

7. *Legal materials*

**\*4** Plaintiff Davis alleges that Defendant Corrections Officer Nealon locked him in his cell without due process when Plaintiff Davis asked Defendant Nealon to stop reading his legal papers. (Am.Compl.¶ 26.) To the extent that Plaintiff Davis conteds that his right to privacy was infringed, his claim fails. Prisoners have limited rights to privacy, and Defendant Nealon's purported reading of Plaintiff Davis's legal materials, without more, does not state a constitutional claim. *See, e.g., Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998). To the extent that Plaintiff Davis claims that his due process rights were violated because he was confined to his cell, he fails to state a cognizable constitutional liberty interest. *See Sandin v. Conner,* 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (disciplinary confinement must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" to constitute liberty interest). Thus, Plaintiff Davis's claim fails.

8. *Assault*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1174088 (N.D.N.Y.)

(Cite as: 2005 WL 1174088 (N.D.N.Y.))

Plaintiff Davis claims that various SCJ Defendants assaulted him on three different occasions. (Am.Compl.¶¶ 27-29.) Excessive force claims by a pretrial detainee are evaluated under the minimum standards iterated in *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). *See Walsh,* 194 F.3d at 48. The amount of force used must be more than "de minimis" or must involve force that shocks the conscience. *Id.* Assuming that Plaintiff Davis's allegations are true, the alleged use of force in this case is de minimis. Furthermore, Plaintiff Davis's deposition testimony demonstrates that the purported physical assaults occurred after he refused to follow direct orders. (*See* Greagan Aff. Ex. H at 34-38, 84-85, 91-92.) Finally, Plaintiff Davis offers no evidence that he suffered any injuries whatsoever. *See Dawes v. Coughlin,* 964 F.Supp. 652, 656-57 (N.D.N.Y.1997) (discussing excessive force claims). Therefore, Plaintiff Davis's claims fail.

9. *Confinement pending disciplinary hearing*

Plaintiffs allege that their constitutional due process rights were violated when they were locked in their cells while awaiting a disciplinary hearing. (Am.Compl.¶ 31.) They also allege that their due process rights were violated because they were not credited for time served while awaiting this disciplinary hearing. The record indicates that Plaintiffs were confined for one day prior to the disciplinary hearing. (Greagan Aff. Ex. H at 125-30). This confinement does not constitute an "atypical and significant hardship" sufficient to create a protected liberty interest. *Sandin,* 515 U.S. at 483-84; *see Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996) (confinement for 12 days while awaiting disciplinary hearing does not implicate protected liberty interest). Furthermore, Plaintiffs' complaint that they were not credited for their pre-hearing confinement does not constitute a constitutional violation. Indeed, New York law does not require that pre-hearing time served to be credited to a disciplinary sentence. *See* N.Y.Code R. & Regs. tit. 7 § 251-5.1(a),(b); *id.* § 253.7(a); *see also Nowlin v. Selsky,* File No. 97-CV-2716, 1992 WL 196782, at *3 (S.D.N.Y. Aug.5, 1992) (discussing pre-hearing confinement and credit under New York law). Thus, Plaintiffs' claim on this point also fails.

10. *Retaliation*

**\*5** Plaintiffs claim that SCJ Defendants retaliated against them because they filed inmate grievances and this civil action. (Am.Compl.¶¶ 25, 32.) The Court evaluates prisoner claims of retaliation with skepticism and caution. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). Retaliation claims are easily fabricated and courts evaluating such claims must avoid unwarranted intrusion into matters of prison administration. *Id.* To establish a prima facie case of First Amendment retaliation, Plaintiffs must show: (1) that the speech or conduct at issue is protected speech or conduct; (2) that Defendants took an adverse action against Plaintiffs; and (3) that there is a causal connection between the protected speech or conduct and the adverse action. *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003). An act is retaliatory only if it would deter "a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Id.; see also Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004). Plaintiffs' claims of retaliation are conclusory and without evidentiary support. Because Plaintiffs fail to prove a prima facie case or that a similarly situated individual would have been deterred from exercising a constitutional right, these claims must be dismissed.

11. *Commissary Prices*

Plaintiffs claim that the commissary prices were excessive, violating their constitutional rights. However, this claim does not amount to a constitutional violation, and must be dismissed. *See Chapdelaine v. Keller,* File No. 95-CV-1126, 1998 WL 357350, at *14 (N.D.N.Y. Apr.16, 1998).

12. *Conclusion*

Accordingly, because Plaintiffs fail to demonstrate that any of the SCJ Defendants violated their constitutional rights, Plaintiffs' § 1983 claims fail.

C. Defendant Dr. Dufrense

Plaintiffs complain that Defendant Dr. Dufrense refused to see or treat them for various medical ailments, including chest pain, severe numbness in their finger tips, and lower back pains. (Am.Compl.¶ 30.) Each Plaintiff must establish that: (1) his medical condition was an objectively a serious one; and (2) Dr. Dufrense acted with deliberate indifference to his medical needs. *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003). "Deliberate

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1174088 (N.D.N.Y.)

(Cite as: 2005 WL 1174088 (N.D.N.Y.))

indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). A prison official does not act with deliberate indifference unless that official "knows of and disregards an excessive risk to inmate health or safety." *Id.*

Dr. Dufrense argues that Plaintiffs' claims must be dismissed because they failed to exhaust their administrative remedies with respect to this medical treatment claim. A prisoner must exhaust his or her administrative remedies before filing a § 1983 action. *See* 42 U.S.C. § 1997e(a). However, the record reveals that Plaintiffs failed to exhaust their administrative remedies with respect to this medical treatment claim. (*See* D'Amelia, Jr. Aff. Ex. H.) Moreover, even on the merits, Plaintiffs fail to demonstrate that Dr. Dufrensse was deliberately indifferent to their medical needs. To the contrary, the record is replete with medical complaints, records, and treatments. (*Id.* Ex. E.) Thus, Plaintiffs' claim on this point fails.[FN4]

> [FN4.] Furthermore, to the extent that any of Plaintiffs' other claims are against Dr. Dufrense, they fail because Dr. Dufrense lacked any personal involvement in the constitutional violations alleged. *See McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Similarly, these claims also fail because Plaintiffs failed to demonstrate any constitutional violation.

CONCLUSION

**\*6** Plaintiffs fail to demonstrate that a genuine issue of fact remains for trial. In fact, Plaintiffs fail to demonstrate that their constitutional rights were violated. Therefore, Plaintiffs' § 1983 claims must be dismissed. Accordingly, based on all the records, files and proceedings herein, IT IS HEREBY ORDERED that:

1. The SCJ Defendants' Motion for Summary Judgment (Clerk Doc. No. 135) is GRANTED; and

2. Dr. Dufrense's Motion for Summary Judgment (Clerk Doc. No. 132) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

N.D.N.Y.,2005.

Davis v. Buffardi
Not Reported in F.Supp.2d, 2005 WL 1174088 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp., 1993 WL 485600 (S.D.N.Y.)

(Cite as: 1993 WL 485600 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joel GRANT, Plaintiff,
v.
Sup't D. RILEY, Capt. W. Thorne, Lt. T. Healey, Sgt. J.
Buonato, Sgt. W. Connolly, C.O. Hess, C.O. Wilbur,
C.O. McHugh, C.O. Hinden, Defendants.
No. 89 Civ. 0359 (MBM).

Nov. 24, 1993.
Joel Grant, plaintiff, pro se.

Robert Abrams, Atty. Gen. of the State of New York,
Carol Schechter, Asst. Atty. Gen., New York City, for
defendants.

OPINION AND ORDER

MUKASEY, District Judge.

*1 Plaintiff Joel Grant, an inmate at Arthur Kill
Correctional Facility, sues *pro se*, under 42 U.S.C. § 1983,
alleging violations of his rights under the First, Fourth,
Fifth, Eighth and Fourteenth Amendments to the United
States Constitution. The alleged violations took place
while he was incarcerated at Fishkill Correctional Facility
in 1988. Defendants move for summary judgment under
Rule 56(b) of the Federal Rules of Civil Procedure. For
the reasons set forth below, the motion is granted with
respect to plaintiff's claims under the First, Fourth and
Eighth Amendments, and denied with respect to plaintiff's
Fourteenth Amendment due process claim.

I.

Plaintiff is an aspiring artist. He alleges that defendant
William Connelly, who ran the package room at Fishkill
Correctional Facility, deliberately withheld art supplies
that were sent to him from a paint company in Tennessee.
(Amded Complt ¶ 1) He alleges that two packages
containing art materials were received on September 6,
1988, but these were not delivered to plaintiff until

September 29, 1988 and October 5, 1988. (Amded Complt
¶ 1)

Plaintiff further alleges that on November 1, 1988,
defendants Michael Hess and Mark Wilbur, corrections
officers at Fishkill, unlawfully seized seventeen artworks
and two frames that belonged to him and removed these
items from the storage area in which they were kept.
(Amded Complt ¶ 2) Defendant James Buonato was the
supervisor who allegedly gave Hess and Wilbur
permission to remove the paintings. (Amded Complt ¶ 8)
When plaintiff sought to recover his property, he found
that one of the artworks was missing, four were damaged,
and the two frames were destroyed. (Amded Complt ¶ 5)
Plaintiff filed a grievance against defendant Wilbur over
the loss and destruction of plaintiff's property. (Amded
Complt ¶ 9) [FN1]

Two weeks later, plaintiff was informed that he was
to be taken to a hospital outside the prison for treatment of
a leg problem. (Misbehavior Rep., Def. Ex. 4) One of his
escorts on this excursion was to be defendant Wilbur.
(Transcript at 3, Def.Ex. 1) Plaintiff alleges that he feared
for his safety because he believed that defendant Wilbur
harbored ill will towards him due to his filing of the
grievance. (Pl.Affirm. at 6) Therefore, he refused to go on
the medical trip. Plaintiff signed a refusal form, which
contains a handwritten warning that a misbehavior report
could be filed for the refusal, and that plaintiff might be
charged for the costs of the cancelled trip. (Def.Ex. 5)
Plaintiff alleges that when he signed the form, it bore no
mention of a misbehavior report. (Pl.Affirm. at 6)

A misbehavior report was filed, charging plaintiff
with failing to obey a direct order and with failing to
follow facility regulations for call slip procedures.
(Def.Ex. 4) At his disciplinary hearing on December 1,
1988, plaintiff presented his defense and called a witness.
(Transcript at 8, Def.Ex. 1) Defendant Thomas Healey, the
hearing officer, found plaintiff guilty of violating call slip
procedures and sentenced him to ten days in keeplock.
(Transcript at 10, Def.Ex. 1)

*2 Later that day, plaintiff was transferred to a special

Not Reported in F.Supp., 1993 WL 485600 (S.D.N.Y.)

(Cite as: 1993 WL 485600 (S.D.N.Y.))

housing unit ("S.H.U.") to serve his keeplock sentence. He alleges that his belongings were not delivered to his cell for nine hours and that when they were delivered he discovered that another painting was missing. (Amded Complt ¶¶ 20–23) Plaintiff further alleges that there was no heat in his cell for three days. (Amded Complt ¶ 21)

On December 2, plaintiff's property was allegedly searched, even though it had just been brought to him in the S.H.U. the day before. (Amded Complt ¶ 24) Defendants McHugh and Hinden allegedly conducted the search and confiscated several "contraband" items. (Amded Complt ¶ 25) Another misbehavior report was filed, and plaintiff was punished with a work assignment on December 8. (Amded Complt ¶ 26)

Plaintiff appealed his first disciplinary hearing to defendant Dean Riley, who, on December 5, excused plaintiff from serving the last five days of his sentence. (Def.Ex. 2) However, plaintiff alleges that Riley "failed to reverse and expunge [the] bogus and unsupportable decision by Healey." (Amded Complt ¶ 20)

Finally, plaintiff alleges that on December 5, defendant Walter Thorne completed a "white wash, in-house investigation of confiscated paintings" and alleges that Thorne's investigation and findings were "biased and bogus." (Amded Complt ¶ 29)

## II.

Summary judgment is appropriate if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Finz v. Schlesinger,* 957 F.2d 78, 81 (2d Cir.1992), *cert. denied,* 113 S.Ct. 72 (1992). Because granting the motion denies the nonmoving party a trial on the merits, the district court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Gibson v. American Broadcasting Cos.,* 892 F.2d 1128, 1134 (2d Cir.1989); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989) (citations omitted). Furthermore, because plaintiff appears *pro se,* the complaint "must be held to less stringent standards than formal pleadings

drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (citations omitted).

### A. First Amendment

The gist of plaintiff's First Amendment argument is that defendant prison officials destroyed two frames and delayed the delivery of certain art supplies, thereby depriving him of a means of expressing himself. (Complt ¶ 6; Pl.Affirm. at 3) Plaintiff has failed to state a constitutional claim.

Although "artwork, like other non-verbal forms of expression, may under some circumstances constitute speech for First Amendment purposes," *Serra v. United States General Svcs. Admin.,* 847 F.2d 1045, 1048 (2d Cir.1988), the First Amendment does not provide recourse for damages every time a prisoner-artist is hindered from expressing himself through his art. Here, there is no allegation that defendant prison officials sought to censor or suppress plaintiff's artwork. Rather, plaintiff alleges that mail was delayed and frames were destroyed, and that these occurrences had an incidental effect on his ability to paint. Because the First Amendment does not guarantee an absolute right for people to express themselves "at any place, at any time, and in any way that they want," *Olivieri v. Ward,* 801 F.2d 602, 605 (2d Cir.1986), *cert. denied,* 480 U.S. 917 (1987), plaintiff was denied no right when he failed to receive the art supplies or frames in question.

### B. Fifth and Fourteenth Amendments

**\*3** Plaintiff alleges that he was unjustifiably placed in keeplock without due process of law. The hearing officer, defendant Healey, found plaintiff guilty of failing to follow call slip procedures under Rule 106.12 of the Department of Corrections' Institutional Rules of Conduct. That rule provides:

Inmates shall follow all facility regulations and staff directions relating to movement within the facility. This includes, but is not limited to, seating, lock-in, lock-out, call slip procedures, and all activities of a similar nature.

7 N.Y.C.R.R. § 270.2(B)(10)(iii). Because plaintiff's refusal to go to an outside medical facility did not relate to "movement within the facility," this regulation did not provide plaintiff with adequate notice of an infraction. One of the basic components of due process is notice of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1993 WL 485600 (S.D.N.Y.)

(Cite as: 1993 WL 485600 (S.D.N.Y.))

what is prohibited. *Richardson v. Coughlin,* 763 F.Supp. 1228, 1235 (S.D.N.Y.1991) (citing *Grayned v. Rockford,* 408 U.S. 104, 108 (1972)), *aff'd,* 5 F.3d 616 (2d Cir.1993). Due process imposes a "continuing requirement that inmates be free to steer away from prohibited conduct, unentangled by the trappings of poorly delineated prison regulations." *Id.* (quoting *Rios v. Lane,* 812 F.2d 1032, 1039 (5th Cir.1987)). It appears that plaintiff had no notice that his behavior was punishable.

Plaintiff's allegations also establish that defendant prison officials violated New York state law. Section 138.3 of New York Correction Law requires that, "Facility rules shall be specific and precise, giving all inmates actual notice of the conduct prohibited," N.Y.Correct.Law § 138.3 (McKinney 1987), and section 138.5 states that, "No inmate shall be disciplined except for a violation of a published and posted written rule or regulation, a copy of which has been provided the inmate." N.Y.Correct.Law § 138.5 (McKinney 1987). The court has been unable to find any rule or regulation that was violated by plaintiff's refusal to go on the scheduled trip. "Although a state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983, the state regulation [s] that [were] violated in the instant case merely reiterated what already was *required* by the Constitution." *Patterson v. Coughlin,* 761 F.2d 886, 891 (2d Cir.1985) (emphasis in original) (citation omitted).

Although defendants assert that the refusal form signed by plaintiff provided him with actual notice that a misbehavior report would be filed, (Def.Mem. at 2) plaintiff contends that the form he signed contained no such warning. (Pl.Affirm. at 6) The disputed language on the refusal form is handwritten, and thus conceivably may have been added after defendant signed the form. Because the issue of notice presents a triable issue of fact, the motion for summary judgment is denied with regard to the due process claim.[FN2]

C. Fourth Amendment

In his memorandum of law opposing defendants' motion, plaintiff concedes that defendants McHugh and Hinden were entitled to search his cell shortly after he was

moved to the S.H.U. (Pl.Affirm. at 8). The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Hudson v. Palmer,* 468 U.S. 517, 526 (1984); *see also United States v. Cohen,* 796 F.2d 20, 22 (2d Cir.1986), *cert. denied,* 479 U.S. 1055 (1987). Thus, plaintiff fails to state a claim under the Fourth Amendment, notwithstanding his objection to "hav[ing] his property torn through and his legal work perused." (Pl.Affirm. at 8)

D. *Eighth Amendment*

**\*4** Plaintiff's Eighth Amendment claim is based on the allegation that "there was no heat in [his] cell for at least 3 days." (Amded Complt ¶ 21) Plaintiff asserts that he had no coat, bedding or blankets for over nine hours, and that cold wind blew through the broken windows, which were incompletely covered with loose plastic. (Amded Complt ¶ 21) This Circuit has found that "deliberate exposure of inmates by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment." *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988). However, plaintiff does not claim that any defendant deliberately subjected him to the cold, and has alleged only a three-day period of exposure. *See Roach v. Kligman,* 412 F.Supp. 521, 527 (E.D.Pa.1976) (short period in cold, leaky cell does not violate Eighth Amendment). Furthermore, plaintiff did not suffer any harm as a result of these conditions. Plaintiff thus has failed to allege treatment that offends "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," *Estelle v. Gamble,* 429 U.S. 97, 102 (1976), and has not stated an Eighth Amendment claim.

III.

Defendants assert that the Eleventh Amendment and the doctrine of qualified immunity bar plaintiff's suit. Under the Eleventh Amendment, an unconsenting State is immune from suits brought in federal court. *See Employees of Dep't of Pub. Health and Welfare v. Department of Pub. Health and Welfare,* 411 U.S. 279, 280 (1973). Although immunity has been extended to government officials when they act in their official

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1993 WL 485600 (S.D.N.Y.)

(Cite as: 1993 WL 485600 (S.D.N.Y.))

capacity, it has not been extended to such officials when they are sued in their personal or individual capacity. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985); *Scheuer v. Rhodes,* 416 U.S. 232, 238 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 462–463 (1945). Defendants contend that "the present complaint contains no allegation that defendants are sued in their individual capacity." (Def.Mem. at. 16) As defendants well know, plaintiff appears *pro se* and cannot be expected to understand the niceties of federal jurisdiction. Because the court is obligated to draw all reasonable inferences in favor of the nonmoving party, and because a *pro se* plaintiff is entitled to some latitude in pleading, the court assumes that defendants are being sued in their individual capacity.

Finally, qualified immunity does not bar plaintiff's due process claim. A government official is not entitled to qualified immunity if he or she violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Because plaintiff's due process right to notice was clearly established at the time of the alleged violation, the doctrine of qualified immunity is inapplicable here.

3

For the reasons discussed above, defendants' motion for summary judgment is granted with respect to all claims except for plaintiff's due process claim. Because this claim involves only defendants Riley, Wilbur and Healey, it is dismissed with respect to all other defendants.

**\*5** SO ORDERED.

FN1. Plaintiff also filed a law suit under 42 U.S.C. § 1983, alleging deprivation of his property without due process of law. That suit was dismissed by Judge Breiant because adequate state remedies were available. Accordingly, I will not address plaintiff's claims of deprivation of property here.

FN2. In his memorandum of law in opposition to defendants' motion, plaintiff states that he wishes to amend his complaint to allege another

violation of his due process rights. This violation allegedly occurred during the second disciplinary hearing, in which he was found guilty of possessing contraband. It bears mention that this second disciplinary proceeding did not result in an unconstitutional deprivation of life, liberty or property. Plaintiff's punishment was an additional work assignment. Because this sentence did not implicate a protected interest, any alleged violations of procedure do not rise to a constitutional level. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 543 (1985) ("The Due Process Clause provides that certain substantive rights—life, liberty and property—cannot be deprived except pursuant to constitutionally adequate procedures."). Accordingly, plaintiff's motion to amend is denied as futile.

S.D.N.Y.,1993.

Grant v. Riley
Not Reported in F.Supp., 1993 WL 485600 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1  Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided**
**May 23, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P.* *4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

*MEMORANDUM-DECISION AND ORDER*

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

> 2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

> 3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]   The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4 The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5 The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1)* and *4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Younquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k)*. *See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman*, argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a)*. *Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332. Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a)*. Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7   J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] *Civ. No. 94-C944 (D.D.C. 1994), Pourzandvakil v. Doty (E.D.N.Y. 1993), Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8   Former Supreme Court Justice Harry A. Blackmun.
>
> 9   We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875* (3d Cir.) *cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE