IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JEFFREY A. NELSON,

                              Plaintiff,

        v.

BRUCE PLUMLEY and
JEFFREY S. SPEAR,

                        Defendants.

_____

Civil Action No.
9:12-CV-0422 (TJM/DEP)

APPEARANCES:

FOR PLAINTIFF:                          OF COUNSEL:

KEACH LAW OFFICES                       ELMER R. KEACH, III., ESQ.
One Pine West Plaza                     MARIA K. DYSON, ESQ.
Suite 109
Albany, NY 12205

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN               GREGORY J. RODRIGUEZ, ESQ.
New York State Attorney General         Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought by *pro se* plaintiff Jeffrey A. Nelson, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, alleging that he was deprived of his civil rights by individuals employed at the prison facility in which he was confined at the relevant times. As a result of intervening motion practice, the only remaining cause of action pending stems from plaintiff's allegations that he was assaulted by the two remaining defendants, both of whom are corrections officers.

Among the issues raised in a recent summary judgment motion filed by defendants was whether plaintiff satisfied the requirement that he exhaust available administrative remedies before commencing suit. Following a referral of the matter to me for consideration, I conducted an evidentiary hearing to address the question. Based upon the evidence adduced at that hearing, I conclude that plaintiff failed to exhaust available administrative remedies before commencing this action but recommend that he be excused from the exhaustion requirement. The following represent my recommended findings of fact and conclusions of law.

## I. BACKGROUND

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 at 1. Although he is now confined elsewhere, at the time of the alleged assault that forms the basis of his remaining claim, Nelson was incarcerated in the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York. *Id.* at 1, 4. Plaintiff alleges that on January 3, 2012, he was assaulted by defendants Bruce Plumley and Jeffrey Spear, both of whom are corrections officers at Clinton, without provocation, and that, as a result of the incident, he lost consciousness and suffered a concussion and a laceration near his right eye requiring stitches.[1] *Id.* at 4-7.

A New York State prison inmate who wishes to lodge complaints regarding prison conditions may do so by submitting a grievance to prison officials in accordance with the Inmate Grievance Program ("IGP") established by the DOCCS. The filing of internal grievances through the IGP

---

[1]     As a result of the incident plaintiff was issued two misbehavior reports accusing him of failing to obey a direct order, assaulting a staff member, and engaging in violent conduct. Dkt. No. 1 at 13; Dkt. No. 49-3 at 2, 9-10. Following a disciplinary hearing, plaintiff was found guilty of the charges and sentenced to serve eighteen months of disciplinary confinement in a facility special housing unit ("SHU"), with a corresponding loss of privileges and a recommendation that he forfeit twelve months of good time credits. Dkt. No. 49-3 at 12, 88-89. The determination and resulting sanctions were upheld on appeal to the DOCCS central office. *Id.* at 91.

is governed by DOCCS Directive No. 4040 and codified at 7 N.Y.C.R.R. Part 701. Exhs. P-38, D-1. The IGP is comprised of three steps. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson*, No. 96-CV-5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). Ordinarily, an inmate must first submit "a complaint," or grievance, to the facility's IGP clerk within twenty-one days of the alleged occurrence giving rise to his complaint.[2] 7 N.Y.C.R.R. § 701.5(a). Relief from the twenty-one day time limit may be granted by the IGP supervisor based upon mitigating circumstances, provided, however, that "[a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence." *Id.* at 701.6(g)(1)(i)(a).

Once a grievance is lodged, the facility's Inmate Grievance Resolution Committee ("IGRC") is allotted up to sixteen days to informally resolve the

---

[2]     The IGP requires that an inmate "submit" a grievance within twenty-one days of an alleged occurrence, but it does not define the word "submit" or otherwise explain when a grievance is deemed "submitted." *See generally* 7 N.Y.C.R.R. § 701.5(a)(1). In his brief, plaintiff advocates for the extension of the prison mailbox rule to the grievance process. Dkt. No. 78 at 15-17. Some courts addressing this issue have applied the prison mailbox rule, deeming a grievance filed when an inmate places it in the prison mail system. *See, e.g., Breeland v. Cook*, No. 12-CV-2511, 2013 WL 5924592, at *3 (M.D. Pa. Oct. 31, 2013) (applying the mailbox rule to determine the timeliness of an appeal under the controlling grievance procedure); *Schadel v. Evans*, No. 09-CV-1338, 2010 WL 2696456, at *3 (C.D. Ill. July 7, 2010) (applying the prison mailbox rule in determining that the plaintiff timely filed his grievance); *but see Burns v. Fike*, No. 12-CV-0239, 2013 WL 5874582, at *5-6 (W.D. Pa. Oct. 31, 2013) (declining to apply the prison mailbox rule because, *inter alia*, "[t]his Court has found no other court that has applied th[e] rule to the submission of inmate grievances or appeals during the grievance procedure"). Given my recommended findings, I find it unnecessary to decide this issue.

matter. 7 N.Y.C.R.R. § 701.5(b)(1). In the absence of such an informal resolution, the full IGRC must conduct a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2)(i). In the event a hearing is conducted, a decision must be provided to the grievant within two working days after the hearing is closed. *Id.* at § 701.5(b)(3)(i).

If dissatisfied with the IGRC's decision, a grievant may appeal to the facility superintendent within seven days after its receipt. 7 N.Y.C.R.R. § 701.5(c)(1). Unless the grievance involves the alteration or revision of a DOCCS policy or directive, the superintendent must then render a decision on the grievance appeal and transmit his decision to the inmate within twenty calendar days from the date the appeal is received. *Id.* at § 701.5(c)(3)(i)-(ii).

The third and final step of the IGP embodied in DOCCS Directive No. 4040 is an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be submitted within seven days after receipt of the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). Once an appeal is taken, the CORC has thirty days within which to render its decision. *Id.* at § 701.5(d)(2)(ii).

The IGP provides for expedited processing of grievances related to allegations of inmate harassment by DOCCS officials. 7 N.Y.C.R.R. §

701.8. Such grievances alleging harassment, including those alleging that an inmate has been assaulted by a staff member, are forwarded directly to the superintendent of the facility. 7 N.Y.C.R.R. § 701.8(c). The superintendent must render a decision within twenty-five days of receipt of the grievance. *Id.* at § 701.8(f). If the superintendent fails to respond within the required time, the inmate may then appeal to the CORC. *Id.* at § 701.8(g). An appeal of the superintendent's determination must be taken by the inmate to the CORC within seven days of receipt of the superintendent's response. *Id.* at § 701.8(h).

Plaintiff was confined in a special housing unit ("SHU") cell at Clinton immediately following the alleged assault by defendants Plumley and Spear. Dkt. No. 75 at 124. Addressing the procedure for the filing of grievances by SHU inmates, the IGP provides that, "[w]here available, SHU inmates shall use centrally located IGP deposit boxes to send grievance forms and IGP correspondence to the IGP office." 7 N.Y.C.R.R. § 701.7(b). The deposit boxes are required to remain locked, only certain individuals may have access to them, and they must be emptied at least twice weekly. *Id.* IGRC representatives are also required to make regular rounds, including, at least once weekly, throughout a facility SHU to permit inmates to access the IGP. *Id.* at § 701.7(c).

In practice, the procedure at Clinton for the filing of grievances by SHU inmates does not strictly follow the protocol specified in Directive No. 4040. Instead, SHU inmates at that facility are required to submit their grievances through the prison mail system.[3] Dkt. No. 75 at 150. An inmate in the Clinton SHU must place his grievance in the mailbox used to collect all correspondence. *Id.* From there, the grievance is forwarded to the facility mailroom, where it is sorted and forwarded to the IGP supervisor's office. *Id.* at 150-51. In addition to use of the mail system, an inmate confined in the SHU can also hand a grievance to the grievance sergeant during one of his or her regular rounds among the facility's housing units. *Id.* at 151.

Plaintiff claims that on January 9, 2012, he authored a handwritten grievance complaining that he was assaulted by two corrections officers, who are not named in the document, and requesting that he "be provided with mental health treatment without torture[.]" Dkt. No. 75 at 14-15; Exh. P-7. According to plaintiff, he prepared a second handwritten grievance on January 10 or 11, 2012, in which he again complained of the alleged assault, and, in this grievance, named defendants Spear and Plumley as the offending officers. Dkt. No. 75 at 15-16; Exh. P-8. Both of those

---

[3]     The process for the filing of grievances by SHU inmates at Upstate is similar to that at Clinton. Dkt. No. 75 at 192.

grievances, referred to in this report as "the January grievances," were prepared on plain paper, rather than utilizing the standard grievance form available to inmates.[4] Exhs. P-7, P-8. Plaintiff testified that he sent the January grievances through the prison mail system to Clinton IGP personnel and that an unidentified DOCCS corrections officer picked them up from his cell on January 12, 2012. Dkt. No. 75 at 15-16. According to prison personnel, however, neither of the grievances was ever received by the IGP supervisor or any other authorized IGP representative at Clinton. *Id.* at 36-37; Exh. P-21.

In addition to the January grievances that he claims to have submitted, plaintiff sent written complaints concerning the alleged assault on January 3, 2012 to several agencies, including (1) a letter to the DOCCS Inspector General ("IG"), dated January 8, 2012, Exh. P-40; (2) a letter to the New York State Commissioner of Corrections, dated January 8, 2012, Exh. P-4; (3) a letter to the New York State Commission on Quality Care, dated January 9, 2012, Exh. P-5; (4) a letter, dated January 9, 2012, to the Legal Aid Society;[5] and (5) a letter, dated January 9, 2012, to "Dr. C.

---

[4]    The IGP permits inmates to prepare grievances on plain paper rather than the prescribed grievance form. *See* 7 N.Y.C.R.R. § 701.5(a)(1) ("If [inmate grievance complaint form #2131] is not readily available, a complaint may be submitted on plain paper.").

[5]    The record does not contain plaintiff's correspondence to the Legal Aid Society. It

8

Calley," identified by plaintiff as a "doctor practitioner" at Clinton, Exh. P-6. Dkt. No. 75 at 16-20.[6] It appears that all of those letters were received by the intended recipients. Exhs. P-9, P-10, P-12, P-14. Plaintiff received responses to his letters from the Legal Aid Society, dated January 19, 2012, Exh. P-10; the New York Commission of Correction, dated January 25, 2012, Exh. P-12; the Commission on Quality of Care and Advocacy for Person with Disabilities, dated January 31, 2012, Exh. P-14; and C. Calley who appears to be a nurse practitioner rather than a physician, dated January 17, 2012, Exh. P-9.

On January 20, 2012, plaintiff wrote to Thomas LaValley, the superintendent at Clinton, complaining that the hearing officer presiding over his disciplinary hearing, which occurred following the issuance of misbehavior reports to plaintiff regarding the incident on January 3, 2012, was "not administering the hearing in a fair manner." Exh. P-11; Dkt. No. 75

---

does, however, contain a letter, dated January 19, 2012, from the Legal Aid Society to plaintiff acknowledging receipt of his letter dated January 9, 2012, and stating, "We are very concerned to hear about the brutality you experienced in the Clinton observation cells." Exh P-10.

[6]     None of those letters can be construed as constituting a grievance as defined under the IGP. The term "grievance" is defined by DOCCS Directive No. 4040 as "a complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedural or rule of the Department of Correctional Services or any of its program units, or the lack of a policy, regulation, procedure or rule. *A letter addressed to a facility or central office staff is not a grievance.*" 7 N.Y.C.R.R. § 701.2(a) (emphasis added).

at 20-21. There was no reference in that letter to the January grievances. *See generally* Exh. P-11.

Plaintiff wrote to the IGP Supervisor at Clinton on January 27, 2012, enclosing a grievance alleging the deprivation of procedural due process in connection with the disciplinary hearing. Dkt. No. 75 at 27-28; Exh. P-13. The grievance was processed and assigned Grievance No. CL-61889-12. Exh. P-13. In the cover letter accompanying his grievance, Nelson requested the status of "[his] other two (2) grievance[s] dated 1-9-2012, and 1-10-2012[.]" Exh. P-13.

On February 7, 2012, Nelson wrote to the IGRC at Clinton enclosing a grievance appeal and again inquiring about the January grievances.[7] Dkt. No. 75 at 23; Exh. P-15. *Id.* In response, Christine Gregory, the IGP Supervisor at Clinton, sent plaintiff a written memorandum, dated February 8, 2012, explaining the basis for the dismissal of CL-61889-12. Exh. P-17. Gregory, however, made no reference to plaintiff's request for the status of the January grievances. *See id.*

In a subsequent written communication to Clinton IGP Supervisor Gregory, dated February 10, 2012, plaintiff again inquired concerning the

---

[7]   It appears that this letter refers to an appeal from the denial of Grievance No. CL-61889-12, dated January 31, 2012. *See* Exh. P-16. The grievance was denied because it involved a disciplinary hearing, the results of which are appealed through channels independent of the IGP. *Id.*

status of the January grievances. Dkt. No. 75 at 29-30; Exhs. P-18; D-11. Plaintiff followed that communication with a letter, dated February 14, 2012, to Clinton Superintendent LaValley containing the same inquiry. Dkt. No. 75 at 30-31; Exhs. P-19; D-13.

On or about February 14, 2012, plaintiff was transferred from Clinton to the Upstate Correctional Facility, located in Malone, New York.[8] Dkt. No. 75 at 33; Exh. P-37. On February 15, 2012, Clinton IGP Supervisor Gregory sent plaintiff a letter in response to his correspondence dated February 10, 2012, advising that there was no record of any grievances filed by the him at Clinton with dates of either January 9, 2012 or January 10, 2012. Dkt. No. 75 at 36-37, 159-160; Exhs. P-21, D-12. The letter advised plaintiff that, because he was no longer confined at Clinton, he should direct any further complaints to the inmate grievance office at Upstate.[9] *Id.*

On February 16, 2012, plaintiff submitted two grievances to the IGP Supervisor at Upstate, one requesting proper mental health treatment, and

---

[8]     Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined for twenty-three hours each day, primarily for disciplinary reasons. *Samuels v. Selsky*, No. 01-CV-8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

[9]     Under the IGP, "[a] complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." 7 N.Y.C.R.R. § 701.5(a)(1); *see also* Dkt. No. 75 at 160.

the other complaining of the assault of January 3, 2012.[10] Dkt. No. 75 at 41-46. Exhs. P-22, D-2. In his cover letter to the grievance supervisor, Nelson stated that the two grievances were previously filed at Clinton "[b]ut that prison [sic] made the remedy unavailable by obstructing access to the grievance process." Exhs. P-22, D-2. The letter went on to add "I will [sic] also like to appeal to C.O.R.C. for lack of implementation as a mitigating circumstance." *Id.* Those two grievances were returned to plaintiff from Upstate IGP Supervisor Brandi White – now Brandi Collyer – informing him that they were being rejected as having been filed beyond the twenty-one calendar day limitation set forth in the 7 N.Y.C.R.R. § 701.5(a)(1). Dkt. No. 75 at 46-47; Exhs. P-23; D-4. Plaintiff was also advised that he could "pursue a complaint that an exception to the time limit was denied by filing a separate grievance." *Id.*

After receiving the communication from Upstate IGP Supervisor White, Nelson submitted a handwritten communication, dated February 17, 2012, enclosing a grievance prepared on plain paper, complaining of

---

[10]    Plaintiff testified during the hearing that the grievances were submitted on forms obtained by him while at Upstate. Dkt. No. 75 at 97. The caption at the top of the form, however, has been altered by plaintiff to read "Upstate Correctional Facility," rather than "Clinton Correctional Facility." Exhs. P-22, D-2. When asked about this discrepancy at the exhaustion hearing, plaintiff testified he "used the forms that w[ere] provided to [him] when [he] first [arrived] to Upstate facility, those are the forms [he] used." Dkt. No. 75 at 97.

obstruction at Clinton and requesting an extension of time to file a grievance concerning the assault. Dkt. No. 75 at 48-50; Exhs. P-24; D-6. In his cover letter, plaintiff added, "May i [sic] also exhaust and exercise all administrative appeal remedies to the Central Office Review Committee – C.O.R.C.?" Exhs. P-24; D-6. Plaintiff mailed his grievance on the following day, February 18, 2012. Dkt. No. 75 at 50.

Plaintiff's grievance submitted on February 18, 2012, was returned to him on February 22, 2012, by Upstate IGP Supervisor White. Dkt. No. 75 at 51; Exhs. P-26, D-5; Collyer Dep. at 25-26. In so doing, White concluded that plaintiff's request for an extension of time to file his grievance was untimely "as it [wa]s beyond the 45 day time limit" pursuant to 7 N.Y.C.R.R. § 701.6(g). Exhs. P-26, D-5. After receiving notice of the rejection, plaintiff submitted another grievance on February 22, 2012, arguing that his request to file outside the time limits based on mitigating circumstances was timely.[11] Exh. P-27. That grievance was assigned Grievance No. UST-48567-12, and denied by the IGRC on March 6, 2012. Dkt. No. 75 at 58; Exh. P-30. In its response, the IGRC denied the grievance noting that, according to Clinton IGP Supervisor Gregory, there were no open

---

[11]    Plaintiff also wrote a letter to Upstate Superintendent D. Rock on February 22, 2012, claiming that his access to the grievance process was being obstructed. Exh. P-28. Superintendent Rock responded on February 23, 2012, by advising plaintiff that grievances, inquiries, and appeals should be submitted directly to the IGP office and returning his complaint so that it could be handled directly with the proper office. Exh. 29.

grievances on file for plaintiff, and that, while he had attempted to file the grievances at Upstate, they were submitted beyond the forty-five day limit under 7 N.Y.C.R.R. § 701.6(g). Exh. P-30.

On March 6, 2012, plaintiff appealed the IGRC's denial of his grievance to the superintendent at Upstate. Dkt. No. 75 at 58; Exh. P-30. Plaintiff's appeal was denied by Superintendent Rock on March 15, 2012. Exh. 32. Plaintiff appealed that determination to the CORC March 19, 2012. *Id.* The superintendent's determination was affirmed by the CORC on August 1, 2012. Exh. P-36.

On March 22, 2013, plaintiff wrote to Clinton Superintendent LaValley enclosing carbon copies of his January grievances and asking him to issue a decision regarding those complaints. Exh. P-33. By memorandum dated March 26, 2012, Superintendent LaValley informed plaintiff that his communication had been referred to Clinton IGP Supervisor Gregory "for review and appropriate action." Exh. P-34. Gregory subsequently responded to the plaintiff on April 9, 2012, reiterating that there were no grievances on file at Clinton with written dates of January 9, 2012 or January 10, 2012, and directing him to submit complaints to the IGP office at his present facility. Exh. P-35. Gregory also returned his correspondence, informing him that his complaints filed at Clinton would not be processed. *Id.*

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on or about March 8, 2012. Dkt. No. 1. His complaint, which asserted multiple claims against various DOCCS employees, was met with the filing of a motion to dismiss. Dkt. No. 25. Senior District Judge Thomas J. McAvoy issued a decision on March 18, 2013, granting in part the defendants' motion and significantly narrowing the claims. Dkt. Nos. 32, 34. Following the close of discovery, defendants filed a motion for summary judgment, which resulted in another decision by Judge McAvoy dismissing some of plaintiff's other claims. Dkt. Nos. 49, 59, 61. The action now involves only an excessive force cause of action against defendants Plumley and Spear, and the matter was referred to me for the purpose of conducting an evidentiary hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011), to address whether plaintiff is precluded from pursuing the remaining claim based upon his failure to exhaust available administrative remedies before filing suit. Dkt. Nos. 59, 61. Following appointment of counsel, an evidentiary hearing was conducted on February 18, 2015.[12]  Text Minute Entry Dated Feb. 18, 2015.

---

[12]     The court wishes to express its appreciation to Maria Dyson, Esq., who agreed to accept an assignment as plaintiff's *pro bono* attorney, as well to her colleague, Elmer Keach, III., Esq., for the energetic, highly competent, and professional effort expended by them on behalf of the plaintiff.

III.   <u>DISCUSSION</u>

Among the restrictions on inmate litigation introduced through enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), is a section that provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. at 81, 84 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In the event an inmate plaintiff commences an action in federal court prior to fully exhausting his administrative remedies, his unexhausted claims are subject to dismissal. *Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 93.

As was discussed above, inmates confined by the DOCCS seeking to lodge complaints regarding prison conditions are afforded access to a comprehensive DOCCS grievance procedure, comprised of three steps, all

of which must be satisfied to properly exhaust available administrative remedies. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson*, No. 96-CV-5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). As explained above, the three steps of the IGP include the filing of the grievance with the IGRC, an appeal to the facility superintendent, and a further appeal to the DOCCS CORC.[13] *See generally* 7 N.Y.C.R.R. § 701.5; *Murray v. Palmer*, No. 03-CV-1010, 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.).

In this case, plaintiff contends that the January grievances, dated January 9, 2012 and January 10, 2012, were prepared and delivered to prison officials but were not processed. Defendants, by contrast, deny receiving those grievances. Before addressing these conflicting accounts, the court must decide who, as between plaintiff and defendants, bears the burden of proof with respect to the exhaustion doctrine.

As an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of

---

[13] As was also discussed above, plaintiff's January grievances would have been subject to a more streamlined, two-step process because they involved an allegation of assault by DOCCS staff. 7 N.Y.C.R.R. § 701.8.

the evidence.[14] *Soria v. Girdich*, No. 04-CV-0727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 6, 2007) (DiBianco, M.J.) (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 247 (S.D.N.Y. 2003)); *McEachin v. Selsky*, No. 04-CV-0083, 2005 WL 2128851, at *4 (N.D.N.Y. Aug. 30, 2005) (Scullin, J.) (citing *Howard v. Goord*, No. 98-CV-7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part*, 225 F. App'x 36 (2d Cir. 2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by the *Hemphill* trilogy and related cases because that line of cases incorporates concepts – such as estoppel, for example – that typically require the party asserting them to bear the ultimate burden of proof.[15] *See, e.g., Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel[.]"); *In re Heflin*, 464 B.R. 545, 554 (D. Conn. 2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R.R. Co.*, 86 F.2d 637, 640 (2d Cir. 1936)).

---

[14]     The defendants in this case properly asserted plaintiff's failure to exhaust available administrative remedies as an affirmative defense to his claims. Dkt. No. 36 at 2-3.

[15]     The three cases decided together by the Second Circuit, referred to by me as the "*Hemphill* trilogy," include *Hemphill v. N.Y.*, 380 F.3d 680 (2d Cir. 2004); *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); and *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004).

Complicating matters further is that several courts have held that, once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray*, 2010 WL 1235591, at * 4 & n.17; *see also Calloway v. Grimshaw*, No. 09-CV-1354, 2011 WL 4345299, at *5 & n.5 (N.D.N.Y. Aug. 10, 2011) (Lowe, M.J.) (citing cases), *report and recommendation adopted* by 2011 WL 4345296 (N.D.N.Y. Sep. 15, 2011) (McAvoy, J.); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 155 (E.D.N.Y. 2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense). Those decisions, while referencing the burden of proof applicable to an affirmative defense, seem to primarily address an inmate's burden of *production*, or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or special circumstances, rather than speaking to the ultimate burden of *persuasion*.

I have been unable to uncover any cases squarely holding that a defendant bears the ultimate burden of proof with respect to all elements of

a *Hemphill* inquiry. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias*, 495 F.3d at 41 ("In *Hemphill* we 'read together' [a series of cases] and formulated a three-part *test*[.]"(emphasis added)). I therefore find that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendants. *See Puga v. Choto*, No. 11-CV-0070, 2014 WL 675824, at *5 (N.D.N.Y. Feb. 21, 2014) (McAvoy, J., *adopting report and recommendation by* Hummel, M.J.) ("In following the *Hemphill* analysis, the burden of proof rests with defendants while plaintiff bears the burden of production as to estoppel and special circumstances."); *Soria*, 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies."); *but see Perry v. Rupert*, No. 10-CV-1033, 2013 WL 6816795, at *4 (N.D.N.Y. Dec. 20, 2013) (Kahn, J., *adopting report and recommendation by* Dancks, M.J.) ("Upon raising th[e exhaustion] defense, the burden of proof shifts to the plaintiff to show that his case falls under at least one of the exceptions accepted by the Second Circuit under the *Hemphill* test."); *accord, Mateo v. Bristow*, No. 12-CV-5052, 2014 WL 4631569, at *8 (S.D.N.Y. Sept. 17,

2014).

It is uncontradicted that the January grievances concerning the alleged assault by defendants Plumley and Spear were never processed by Clinton IGP Supervisor Gregory and, accordingly, never forwarded to the superintendent and on to the CORC on appeal. Defendants have therefore proven, by a preponderance of the evidence, that plaintiff failed to exhaust all administrative remedies before commencing suit.

The inquiry now turns to whether any of the three *Hemphill* considerations apply in this case excusing plaintiff's failure to exhaust. The Second Circuit's decisions in the *Hemphill* trilogy instruct that before dismissing an action as a result of a plaintiff's failure to exhaust, the court must determine whether (1) administrative remedies were available to the plaintiff at the relevant times; (2) the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise it or through their own actions preventing plaintiff's exhaustion of remedies, they should be estopped from asserting to exhaust as a defense; or (3) special circumstances exist justifying the plaintiff's failure to comply with the applicable administrative procedure requirements. *Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007); *Hemphill*, 380 F.3d at 686.

Examining the first *Hemphill* consideration, I conclude that the

grievance process was not available to the plaintiff at the relevant times. Although, as discussed above, the DOCCS made "available" to plaintiff the IGP, which allowed him to file regular grievances and those alleging staff misconduct, the mere existence of the IGP "does not end the inquiry into availability." *Hemphill*, 380 F.3d at 687. Here, plaintiff credibly testified that on January 12, 2012, he attempted to mail the January grievances concerning defendants' alleged assault by having a corrections officer pick them up while he was confined in the SHU at Clinton. Dkt. No. 75 at 34-35. While Clinton IGP Supervisor Gregory testified that she never received those grievances, there is no record evidence that explains or suggests why they were not processed or what happened to them after they were retrieved by the unidentified DOCCS corrections officer. *Id.* at 159. Defendants have offered no reason why plaintiff would fabricate the grievances *post hoc*, nor do they provide any reason for why plaintiff would be reluctant to prepare and forward a grievance for processing. At the time he claims to have mailed the grievances, plaintiff sent several letters to various DOCCS officials complaining of the assault, demonstrating that he did not fear retribution for complaining concerning the incident. Dkt. No. 75 at 17-20; Exhs. P-4, P-5, P-6, P-11, P-40. Moreover, by his own admission, plaintiff is no stranger to the grievance process and does not appear to have

hesitated in lodging complaints concerning this and other matters, both utilizing the IGP and through other avenues. Indeed, the record reflects that plaintiff is a seasoned grievant well-versed in the grievance process made available by the DOCCS, having filed twenty-five appeals to the CORC over the course of his incarceration. Exh. D-27.

In the absence of any evidence that would explain what happened to plaintiff's January grievances, and in light of plaintiff's credible testimony, I find that the IGP was effectively rendered unavailable to plaintiff when his grievances were lost after a corrections officer picked them up from his SHU cell. When plaintiff did not receive a response from an IGP representative by way of a grievance number or hearing date, he sent letters to multiple people requesting the status of the grievances. Dkt. No. 75 at 27, 30-31; Exhs. P-13, P-18, P-19. Although plaintiff sent a letter to the IGRC as early as January 27, 2012, regarding the status of the grievances, he did not receive a response from anyone until February 15, 2012, after he had been transferred to Upstate. Exh. P-21. In that response, Clinton IGP Supervisor Gregory instructed plaintiff to file any further complaints to the grievance office at Upstate. *Id.* Heeding that advice, plaintiff then immediately attempted to re-file his two grievances at Upstate on February 16, 2012. Dkt. No. 75 at 41-41; Exh. P-22. Plaintiff's efforts to file his grievances were

thwarted by Upstate IGP Supervisor White, however, when, in response to

his first letter dated February 16, 2012, she rejected the filing of the

grievances because they were outside the twenty-one day period pursuant

to 7 N.Y.C.R.R. § 701.5(a)(1). Exh. P-23. Because White advised in that

letter that he may "pursue a complaint that an exception to the time limit was

denied by filing a separate grievance," plaintiff immediately sent another

grievance in accordance with that instruction. Exh. P-24. Upstate IGP

Supervisor White then rejected this grievance, too, as beyond the forty-five

day period to request an extension of time to file a grievance pursuant to 7

N.Y.C.R.R. § 701.6. Exh. P-26. White's responses are particularly

frustrating in light of plaintiff's communication to her that he wished to

appeal his grievances[16] and given that, at the time White responded to

---

[16]    Various courts in this circuit have faulted an inmate-plaintiff for failing to appeal
the fact that DOCCS officials (*i.e.,* the IGRC or a facility superintendent) did not timely
respond to his grievance or appeal. *See, e.g., Rosado v. Fessetto*, No. 09-CV-0067,
2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) (Baxter, M.J.), *report and
recommendation adopted by* 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010) (Hurd, J.),
("Courts have consistently held . . . that an inmate's general claim that his grievance was
lost or destroyed does not excuse the exhaustion requirement."); *Murray v. Palmer*, No.
03-CV-1010, 2008 WL 2522324, at *15, 18 & n.46 (N.D.N.Y. June 20, 2008) (Hurd, J.,
*adopting report and recommendation by* Lowe, M.J.) ("[E]ven if Great Meadow C.F. did
not . . . have a functioning grievance-recording process (thus, resulting in Plaintiff's
alleged grievance never being responded to), Plaintiff still had the duty to appeal that
non-response to the next level."); *Veloz v. N.Y.*, 339 F. Supp. 2d 505, 515-16 (S.D.N.Y.
2004), *aff'd*, 178 F. App'x 39 (2d Cir. 2006), (rejecting the plaintiff's argument that the
prison's grievance procedure had been rendered unavailable by the practice of prison
officials' losing or destroying his grievances because, *inter alia*, he should have
"appeal[ed] these claims to the next level once it became clear to him that a response to
his initial filing was not forthcoming"); *Croswell v. McCoy*, No. 01-CV-0547, 2003 WL

plaintiff, she had communicated with Clinton IGP Supervisor Gregory regarding plaintiff and was aware he had attempted to file the January grievances within the time period governed by DOCCS Directive No. 4040. Exhs. P-20, D-3. Moreover, plaintiff's initial communication to Upstate IGP Supervisor White, in which he attempted to re-file his grievances, he alleged that his efforts to file at Clinton were thwarted and the IGP rendered unavailable by prison officials. Exh. P-22; Collyer Dep. at 74. Because plaintiff filed this first communication within the forty-five day period for requesting an extension of time to file a grievance, White could have, but did not, construe it as a request for such an extension. Collyer Dep. at 69-70. In light of all of this evidence, I find that, notwithstanding plaintiff's repeated attempts to pursue his grievances regarding the alleged assault by defendants Plumley and Spear, the record reflects that the conduct of DOCCS officials rendered the IGP unavailable to plaintiff.

For essentially the same reasons recited above, I conclude that plaintiff has demonstrated the existence of special circumstances, the third basis under the *Hemphill* trilogy, for excusing a failure to exhaust

---

962534, at *4 (N.D.N.Y. Mar. 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."). In this case, plaintiff attempted to do precisely what those cases have advised by requesting to appeal a non-response to the next level.

administrative remedies.[17] Plaintiff attempted, without success, to file timely grievances concerning the alleged assault by defendants Plumley and Spear and thereafter was persistent in seeking information concerning the status of those grievances and communicating his desire to have the grievances processed and appeal any denials to the CORC. There is no evidence in the record that the absence of any grievances at Clinton regarding the incident is attributable to plaintiff, and it is readily apparent that plaintiff's persistent efforts to follow-up, re-file, and appeal the grievances were frustrated by DOCCS officials. These circumstances suffice to satisfy the third *Hemphill* consideration. *See, e.g., Murray*, 2010 WL 1235591, at *6 (finding an allegation "that an unspecified number of unidentified corrections officers (who are not [named-defendants]) somehow interfered with the delivery of [the plaintiff's] grievance and appeals . . . could constitute special circumstances justifying an inmate's

---

[17] The second *Hemphill* consideration, estoppel, is not applicable in this case. As was previously noted defendants have asserted and properly preserved the defense of exhaustion. In addition, there is no record evidence to suggest that either defendant Plumley or Spear was involved in rendering the IGP unavailable to plaintiff by intercepting his grievances, rejecting them once filed, or otherwise misleading, threatening, or deterring plaintiff from utilizing the administrative process. *See, e.g., Hemphill*, 380 F.3d at 686 ("The court should also inquire as to . . . whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."); *Smith v. Kelly*, 985 F. Supp. 2d 275, 286 (N.D.N.Y. 2013) (Suddaby, J.) ("[A] defendant in a prisoner civil rights action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies . . . based on the actions or inactions of *other* individuals." (footnote omitted) (citing cases) (emphasis in original)).

failure to exhaust his available administrative remedies in certain situations"); *Sandin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008) (finding that the plaintiff's allegation that a prison official's "refusal to accept or forward plaintiff's appeals. . . effectively rendered the grievance process unavailable to [the plaintiff]" and would also constitute special circumstances).

In sum, based upon the unique circumstances of this case, and without detracting from the importance of satisfying the PLRA's exhaustion obligation and fulfilling the procedural requirements of the DOCCS IGP, I recommend that the court find the IGP was not available to plaintiff and special circumstances exist to excuse him from the exhaustion requirement.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff testified credibly that on January 12, 2012, he placed into the prison mail system two grievances, dated January 9, 2012 and January 10, 2012, complaining of the alleged assault by defendants on January 3, 2012. Those grievances, however, were never processed despite repeated inquiries by Nelson concerning their status and his request that he be permitted to appeal the results of those grievances. In addition, a subsequent submission, which could have been construed as a timely request for the filing of a late grievance due to mitigating circumstances,

including obstruction by prison officials, was summarily rejected. I therefore recommend that the court find the IGP was not available to plaintiff at the relevant times and further that special circumstances exist to justify excusing the exhaustion requirement. It is therefore hereby respectfully

RECOMMENDED that the court conclude that plaintiff's claims in this action are not barred by the PLRA based upon his failure to exhaust available administrative remedies before commencing suit and that the matter be set down for trial of the plaintiff's remaining excessive force claim.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.   Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P.   6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

_David E. Peebles_
David E. Peebles
U.S. Magistrate Judge

Dated:    May 14, 2015
            Syracuse, New York